### VAN CHAPMAN v. T. F. WARDEN.

#### Decided April 18, 1908.

**1.—Contract—Failure to Complete.**

Where plaintiff contracted to bore a well a certain depth, or until water was found, at a certain price per foot, and before water was found or the depth reached plaintiff rendered the well worthless by exploding dynamite in it, and abandoned the same, he was not entitled to recover anything for the work done.

**2.—Contract—Construction by Parties.**

When, in a contract for boring a well for water, the depth to which the boring should continue is not specified, the law would imply a depth reasonably calculated to accomplish the purpose in contemplation of both parties. Evidence considered, and held to show a subsequent agreement by the parties as to the depth to which a well should be bored, and which should be read into and considered as a part of the original contract.

**3.—Contract—Obligation to Complete.**

Parties are bound as they bind themselves, and if a contracting party fails to stipulate that the happening of certain contingencies should relieve him from the duty of completing his contract, any loss occasioned by such contingencies must fall upon him.

**4.—Cross Action—Evidence.**

Evidence considered, and held sufficient to show that a defendant was entitled on his cross action to recover from the plaintiff the value of rope furnished to him to be used in boring a well for the defendant, and the value of certain well casing destroyed by the negligence of the plaintiff.

Appeal from the County Court of Jack County. Tried below before Hon. Sil Stark.

*Nicholson & Fitzgerald,* for appellant.

*R. S. Blair,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit and alleged that: "August 25, A. D. 1905, plaintiff and defendant made and entered into a contract whereby, and by the terms of which, plaintiff was to drill and bore a well for defendant on the place known as the John Luttrall or Jim Dean farm, about five miles southeast from Jacksboro, Jack County, Texas, at and for the sum hereinafter stated." It was further charged in substance that pursuant to the contract appellee drilled 334 feet, when upon demand therefor, appellant refused to pay anything for the work so done. It was alleged that the drilling was reasonably worth fifty cents per foot for the first two hundred feet, seventy-five cents for the next forty feet, $1.25 per foot for the next forty feet, $1.50 per foot for the next forty feet, the sum due at such rates being $341, for which appellee sued.

Appellant pleaded the general denial and, specially, that by the terms of the contract, appellee was to "dig as deep as three hundred and fifty feet, or until he reached plenty of water, or until defendant told him to stop," but that he did neither; that on the contrary, at the depth of about three hundred and twenty-two feet "he got the well crooked, and without the knowledge or consent of defendant he procured a large amount of dynamite and placed the same in said well, and blew the casing out of said well, and ruined the well and caused the same to fill up for the distance of one hundred feet." Appellant further alleged that the well was thereafter useless and of no value to him whatever, and that said blast of dynamite ruined well casing belonging to appellant of the value of fourteen dollars, and rope furnished appellee at his request, and for which he promised to pay, of the value of seven dollars, and these two items were pleaded as an offset to appellee's demand.

The evidence is sharply conflicting as to the terms of the contract, that of appellant fully supporting the contract as pleaded by him, while appellee specifically denied that he either insured water, or agreed to bore to any designated depth or until appellant told him to stop. The trial resulted in a verdict and judgment for appellee for the sum of one hundred and fifty dollars, appellant's offsets being wholly denied.

Treating the assignments of error in a general way and pretermitting a discussion of those not deemed material, we have concluded that we must sustain appellant's contention that the verdict and judgment is contrary to the law and the evidence. From appellee's own testimony it appears, as indeed he alleges in his petition, that he was engaged in the business of a well digger—of "boring wells for water"—employing and controlling his own "outfit," and that in undertaking the work for appellant he was acting, by the legal tests, as an independent contractor and not merely as appellant's employee to drill or bore in the ground for such pay as the service was reasonably worth. See Wallace v. Southern Cotton Oil Co., 91 Texas, 21; Cunningham v. International R. R. Co., 51 Texas, 510; Wood v. Independent School District, 44 Iowa, 27; Bishop on Non Contract Law, articles 602-603. Appellee alleges, and so far there is no dispute, that he "contracted to drill or bore a well" for appellant at a designated place, and that he undertook to do so. Among other things, he testified that he "continued to work" until he reached the depth of "about three hundred feet," when he told appel-

lant he "did not go any further than three hundred feet without pay." Water not having been reached, appellant, it appears, insisted on continuing the work for fifty feet farther, to which insistence appellee replied, "I told him that I considered my pay due when I reached the three hundred feet, but that if he wanted me to I would go on down fifty feet further." He further testified: "I went on down about thirty-five feet further, making three hundred and thirty-five feet in all; at that depth I struck a rock that was soft on one side and hard on the other, and my drill would drift, and I worked on that rock about three weeks, putting rock in the hole, trying to go on down. I could not make any speed. I ruined my drill trying to pass the rock, wearing off one side of the drill . . . It was impossible for me to drill through the rock. I then got Mr. Bonner, the dynamite man at the Risley Bros. crusher, and had him dynamite the rock. He put in about twelve pounds of dynamite in the hole and touched it off. The explosion blew the casing out of the well and filled the well up to within about one hundred feet of the top. I demanded my pay from Mr. Chapman and he refused to pay me, stating that the well was of no value to him." On cross-examination appellee further testified: "Yes, he (appellant) bought about seven dollars worth of rope for me while I was there and I agreed to pay him for it, and I have not done so. Yes, he had something like fourteen dollars worth of well casing ruined when the explosion went off in the well. No, the well is no account after the explosion. I did not say anything to the defendant about putting dynamite in the well. I put it in there because I thought it would blow out the rock. I could not have worked any more in the well after the explosion. The well was ruined when the explosion occurred. It is now useless. There was nothing said to the defendant at the time we made the contract about dynamiting the well, neither was there anything said afterwards to him about that matter. Yes, Mr. Luttrall, the father-in-law of the defendant, told me that I had better not put in the dynamite. . . . I have never paid Mr. Chapman anything for that rope, and have never paid anything for the casing destroyed by the dynamite explosion put in the well by me."

If we assume, as we do in deference to the verdict of the jury, that as the contract was originally made appellee did not guarantee to secure water nor agree to bore the well for any given number of feet, yet the contract in its very nature contemplated the procurement of water, and in undertaking the work it is to be implied that appellee agreed to bore at least a reasonable depth for the purpose of securing the object in contemplation of both parties, and we think it may be justly said that when appellee reached the depth of three hundred feet and, as he testified, then agreed to go fifty feet farther, there was an application to the contract of the distance to be bored and that the parties then mutually made certain what was left uncertain by the terms of the contract originally entered into; that is, that by this subsequent mutual agreement the original agreement is to be read as if it specified an undertaking on appellee's part to go at least three hundred and fifty feet unless in the meantime water was secured. If so, but one conclusion can be drawn, and that is that appellee failed to fulfill his con-

tract, and therefore is not entitled to recover pay for his unsuccessful undertaking.

But if this view be erroneous, we think the same result must be reached, for, as already observed, it is to be implied that appellee agreed to bore for water to at least a reasonable depth. It is undisputed that water was not secured, and it is not made to appear, nor is there any contention in appellee's behalf, that a depth of three hundred and fifty feet, or even farther, is an unreasonable distance to bore in order to secure water. It is also undisputed that appellee by his own act and without fault or direction of appellant destroyed the work already done, so that the well became entirely useless and of no value to appellant, and we fail to see any just reason for holding that the loss should fall upon appellant rather than upon appellee. In undertaking the work, appellee impliedly warranted that he could perform the thing he undertook to do,—that is, to bore until water was secured or at least to a reasonable distance in the effort to do so. In the contract he made no provision exempting him from performance for causes such as here shown, nor does the contract contain any warranty on the part of the owner. The case is analogous, it seems to us, to building contracts where, before the completion of the building, it is destroyed without the fault of the owner or, indeed, of either party, and where in the absence of warranties providing for the contingency, the loss is held to devolve upon the contractor. See Weis v. Devlin, 67 Texas, 507; Burke v. Purifoy, 21 Texas Civ. App., 202; Dermott v. Jones, 2 Wall., 1 (Law ed., Book 17, 762); Lonergan v. San Antonio Loan & Trust Co., 101 Texas, 63. In the case last cited it was held that the contractor was required to bear the loss of the destruction of a building undertaken by him which fell by reason of insufficient and defective plans and specifications furnished by the owner, there appearing no warranty on the part of the owner that the specifications were sufficient. In the case of Dermott v. Jones, cited above, the Supreme Court of the United States held, in effect, that the contractor of a building must bear the cost of repairs necessitated by defects in the soil upon which the foundation rested and of which neither the owner nor builder was cognizant at the time of the undertaking. As a reference to authorities to which we have no access, and as here applicable, we make the following quotation from that decision: "If a tenant agree to repair, and the tenement be burned down, he is bound to rebuild. Bullock v. Dommitt, 6 T. R., 650. A company agreed to build a bridge in a substantial manner and to keep it in repair for a certain time. A flood carried it away. It was held that the company was bound to rebuild. Brecknock v. Pritchard, 6 T. R., 750. A person contracted to build a house upon the land of another. Before it was completed it was destroyed by fire. It was held that he was not thereby excused from the performance of his contract. Adams v. Nichols, 19 Pick., 275; Brumby v. Smith, 3 Ala., 123. A party contracted to erect and complete a building on a certain lot. By reason of a latent defect in soil the building fell down before it was completed. It was held that the loss must be borne by the contractor. School Trustees v. Bennett, 3 Dutcher, 513. The analogies between the case here cited and the one under consideration are very striking. There is scarcely a remark in the judgment of the court in that case

that does not apply here. Under such circumstances equity can not interpose. Gates v. Green, 4 Paige, 355; Holtzapfel v. Baker, 18 Ves., 115. The principle, which controlled the decision of the cases referred to, rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated." (Dermott v. Jones, 2 Wall., 1.) In the case of Fuller v. Kaminsky, 41 Texas Civ. App., 549, this court held that a well digger was not entitled to recover for partial performance in drilling a well, the completion of which was rendered impossible because of the crimping of the casing, and while that was a County Court case, we think it applies here and have no reason to alter our conclusion. On the whole we think, as before stated, that in no view of the case was appellee entitled to recover.

There yet remains for disposition appellant's cross claim. We fail to find any valid reason why appellant should be denied recovery of the items he sought. Appellee admits the purchase of the rope at his request and a failure to pay therefor, and it seems certain that appellant is entitled to recover for this item. Appellant's right to recover the damages done to his casing may not appear quite so clear. We have nevertheless finally concluded that he should recover for this also. As opposed to this conclusion it is insisted that appellant failed to show negligence in the use of dynamite. We held in the case of Barnes v. Zettlemoyer, 25 Texas Civ. App., 468, that the burden was on a person claiming damages from an explosion of dynamite to establish negligence. But this was a case of an unknown cause for the explosion. Here, however, the destructive blast was voluntarily set off by the person sought to be charged, and whether in such case a different rule should apply we need not stop to inquire, for it is undisputed in the evidence that appellee against advice to the contrary caused to be fired a quantity of a highly explosive and dangerous substance sufficient to cause unusual, instant and extensive destruction. It does not appear from the evidence that such blasts, or indeed blasts of dynamite of any kind, are usual or customary in the bottom of a well for the purpose of more easily penetrating rock or other substance found therein. Nor does it appear that the party employed by appellee had experience or was qualified for the particular thing undertaken. From all which we think an inference of negligence on appellee's party necessarily arises, and which, in the absence of explanation as here, establishes it. It seems to be a case for the proper application of the maxim, *res ipsa loquitur*. Nothing in the explosion indicates that its destructive results were due to an accident or from some unforeseen cause, and we are of opinion that appellee must be held chargeable for the damages to appellant's casing.

It is accordingly ordered that the judgment be reversed and here rendered for appellant in accord with the foregoing conclusions.

*Reversed and rendered.*