DOCKERY v. THORNE.†

(Court of Civil Appeals of Texas. Feb. 22, 1911. On Motion for Rehearing, March 15, 1911.)

1. LANDLORD AND TENANT (§ 230*)—ACTION FOR RENT—PRIVITY OF TITLE.

Where plaintiff sued for rent under two leases each covering an undivided half of a building, and alleged that he was the owner of one lease and the agent of the owner of the other, and was entitled to all the unpaid rent under both leases, the petition sufficiently alleged privity of contract between plaintiff and defendant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 904–925; Dec. Dig. § 230.*]

2. LANDLORD AND TENANT (§ 230*)—ACTION FOR RENT—PETITION.

Where a petition to recover rent accruing during an extension of the term clearly alleged the time when the extension was given to defendant, it was not objectionable for failure to allege the time during which an intervening oc-cupant was in possession and when he vacated the premises; no claim for rents being made during such period.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 904–925; Dec. Dig. § 230.*]

3. LANDLORD AND TENANT (§ 230*)—ACTION FOR RENT—PETITION.

Where a petition was sufficient to charge defendant for the rent for two years during which a lease of the premises was extended, it was not material that it failed to allege when defendant's occupant left the premises, especially in view of testimony that defendant paid for part of the time during such occupancy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 904–925; Dec. Dig. § 230.*]

4. FRAUDS, STATUTE OF (§ 58*)—EXTENSION OF LEASE.

A parol extension for two years of a written lease on the same terms as specified therein is not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 90–92; Dec. Dig. § 58.*]

5. FRAUDS, STATUTE OF (§ 129*)—ESTOPPEL TO ASSERT.

Where defendant not only sought a parol extension of a written lease, but paid rent for a part of the time for which the extension was granted, he could not then assert that the extension was invalid under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–326; Dec. Dig. § 129.*]

6. LANDLORD AND TENANT (§ 89*)—LEASES—EXTENSION.

Where a landlord had never released the tenant while another was occupying the premises, and, on the expiration of the lease, an extension for two years was indorsed thereon, and after this the tenant paid rent for part of the extended period, though the property was in fact occupied by others, there was no new tenancy, but a mere extension of the former term, rendering the tenant still liable for the rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 282; Dec. Dig. § 89.*]

On Motion for Rehearing.

7. FRAUDS, STATUTE OF (§ 129*)—LEASE—EXTENSION—SIGNING.

Where a tenant held possession of demised premises by virtue of an extension of a lease for two years and paid the rent for over a year of the extended term, he was bound by the extension, though he did not sign it.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–326; Dec. Dig. § 129.*]

8. FRAUDS, STATUTE OF (§ 129*)—PART PERFORMANCE.

Part performance is available to remove a lease for more than a year from the operation of the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–326; Dec. Dig. § 129.*]

9. LANDLORD AND TENANT (§ 86*)—LEASES—RENEWAL.

Where a lease provided for renewal on the lessee giving written notice to the lessor 30 days prior to the expiration of the lease, parol notice of an election to renew is sufficient to renew at the lessor's election without any further writing.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. § 86.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court April 12, 1911.

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by R. H. Thorne against T. B. Dockery. Judgment for plaintiff, and defendant appeals. Affirmed.

Jones & Jones, for appellant. Z. L. Cobb, for appellee.

FLY, J. This is a suit instituted by appellee to recover of appellant the rent due on a lodging house in El Paso, known as the "Metropole," a portion of which belonged to appellee and the other portion to Gus Momsen; the rent of the latter portion being due to appellee through a contract between him and Momsen. The pleadings showed that there were two leases to appellant, one by Momsen and the other by appellee, and the latter had acquired the right to collect the rent on the Momsen lease, and had granted an extension on them in favor of appellant for two years. It was claimed by appellant that he leased from appellee a certain part of the house and from Momsen the other part of the house in September, 1906, for a period of one year; the time beginning for both on the same day; that both contained a provision that the contract of lease should not be assigned without the consent of the owner; that with such consent on or about January 26, 1907, appellant assigned both leases to one J. D. Peters, and that his tenancy thereby ceased, although he agreed to guarantee payment on the rent; that afterwards Peters turned over possession of the leased premises to Mrs. Fuller, with the consent and approval of appellee, and afterwards, when the year had expired, the lease to Mrs. Fuller was extended by appellee for himself and as agent of Momsen for two years, and Mrs. Fuller became the lessee of Momsen and appellee; and that appellant was in no way connected with the extension of the lease. The cause was tried by the court without a jury, and he rendered judgment in favor of appellee for $1,415.-66, together with 10 per cent. attorney's fees.

The first assignment complains of the overruling of an exception to paragraph 3 of the petition on the ground that it does not allege a privity of contract between appellee and appellant. The petition alleged that appellee was the owner of one lease and the agent of Momsen for the other, and that was sufficient privity. The exception was immaterial anyway, as it was alleged in another part of the petition that appellee was entitled to all the unpaid rents under both leases. The allegations were sufficient to fix the liability of appellant to appellee under both leases.

No rents were claimed for the time Peters occupied the premises, and it was utterly immaterial and unnecessary to allege anything about it, and, as the second assignment deals with that subject, it will be overruled.

Neither was it of any importance as to when Peters vacated the premises, and the third assignment, which attacks the petition because it did not give that date, has no basis whatever. The petition showed clearly when the extension of two years was given to appellant, and that was the time for which appellant was held liable, and not for Peters' time. The petition was sufficient to charge appellant for the rent for two years, and it did not matter when Mrs. Fuller left the premises, and especially is this so in view of the fact that both parties swore that appellant paid for part of the time Mrs. Fuller occupied the house.

The extension of the two leases for two years was signed by appellee alone for himself, and as agent of Momsen, and it is assailed through the fifth assignment of error, because it was not signed by appellant, and was therefore void under the statute of frauds. Appellee testified, however, that the extension was granted to appellant under a verbal agreement between him and appellee, and that was sufficient to take it out of the operation of the statute of frauds. In the case of Bullis v. Presidio Mining Co., 75 Tex. 540, 12 S. W. 397, it was contended by appellants that a contract required by the statute of frauds to be in writing can only be extended in writing, but, said the court, "on the other hand, appellees contend for what we consider the better sustained proposition, that the time of performance of such an undertaking may be extended by a verbal agreement." The judgment was reversed in that case because it was not shown that appellants had verbally agreed to an extension. Again, it is held that when one party to a written contract signs, and the other accepts it without signing, the one failing to sign is bound thereby, and is entitled to its benefits, the same as if he had signed. Martin v. Roberts, 57 Tex. 568; Campbell v. Mc-Fadin, 71 Tex. 31, 9 S. W. 138; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506. The same authorities permit the introduction of parol evidence to show that the party not signing the agreement had bound himself by it. Appellant not only sought the extension, but paid a part of the rent for the time for which the extension was granted and is not in a position to deny his connection with it.

The original leases were transferred by appellant to Peters, but appellant guaranteed the rent to the lessors, and, when Peters vacated the property, he turned it over to appellant, and he was in possession of the property when the extension was made. This disposes of the seventh assignment of error, which is based on the false premise that there had been no return of the premises to appellant before the extension was made. The evidence showed that there was an extension of the old contract for two years, and that no new contract was executed. The following language of the agreement indicates merely an extension: "This lease has been extended according to conditions and terms therein set forth. Giving the two

years' continuation which extends the expiration to Sept. 16, 1909." That was written on the leases which had been signed by the leslors and the lessee, the appellant herein. It indicates on its face that the extension was made to and for the benefit of appellant. Appellant was never released as a tenant even while Peters was occupying the premises, and he was at all times bound for the rent. In the case of Ascarete v. Pfaff, 34 Tex. Civ. App. 375, 78 S. W. 974, decided by this court and cited by appellant, it is held that, when a lease is assigned with the consent of the landlord, the assignee becomes the tenant of the landlord and the original lessee is released, unless he agrees to be bound for the rent. In case he so agrees the rule is, as stated in Patten v. Deshon, 1 Gray (Mass.) 325, and approved in the Ascarete-Pfaff Case: "If the whole or part of the leased premises be transferred by the original lessee for the residue of the term, this is an assignment, and the assignee becomes liable for the whole or a proportionable part of the rent to the original lessor at his election. The first assignee, notwithstanding the assignment, remains liable for the rent, in virtue of his express covenants, if the lessor elects so to hold him, in which case he will be entitled to the rent from the assignees." In connection with the assignment of appellant to Peters; he executed the following written agreement: "Know all men by these presents that I hereby guarantee to R. H. Thorne the rent mentioned in lease on Metropole Rooming House situate at Nos. 110, 112, 114 So. Oregon street, for the term of said lease from R. H. Thorne and Gus Momsen to T. B. Dockery, should J. D. Peters fail to pay same, having assigned same to J. D. Peters." Appellant was the real tenant all the time, and the extension was given for his benefit. He recognized his tenancy by paying a part of the rent due on the extension; in fact, he paid the rent for over half the time. He never at any time denied his tenancy, but recognized it at different times by payments and declarations. Appellee denied that he had any transactions with Mrs. Fuller, and that she did not sign a copy, which was given appellant, with his knowledge or consent. Mrs. Porter, who went into possession of the house in June, 1908, had no contract with appellee, but bought the furniture in the house from appellant, and claimed to pay the rent through him. Appellant admitted paying the rent, but claimed to have done so as the agent of Mrs. Porter. There was evidence that the rent for rooms was collected by appellant, and he stated to Rogers that both Mrs. Fuller and Mrs. Porter owed him for rent, and appellant paid for the electricity, gas and water for the house while Mrs. Porter occupied it.

The trial judge had the witnesses before him, was authorized to pass upon their credibility and the weight to be given their testimony, and his judgment on those matters is final, and cannot be disturbed by an appellate court. The evidence was sufficient to sustain the judgment, and there are no errors necessitating a reversal, and the judgment will be affirmed.

## On Motion for Rehearing.

On September 21, 1906, a written lease contract was entered into by and between appellant and appellee, whereby a portion of a certain house was leased to appellant by appellee for the period of time from September 16, 1906, up to and including September 15, 1907, and it was provided therein that appellant should be entitled to have the lease extend for two years from September 15, 1907, by giving written notice of his intention to renew and extend the lease 30 days prior to its expiration. On January 26, 1907, appellant and Dockery & Co. guaranteed to appellee the payment of the rent by J. D. Peters to whom the house had been sublet, with the consent of appellee. On September 26, 1907, by a memorandum indorsed on the lease contract, the lease was extended according to the terms and conditions therein set forth. The extension was signed by appellee, but was made at the solicitation of appellant, and he recognized it by paying the rent for quite a time. Appellee knew at the time that he gave the extension to appellant that the latter had made arrangements to sell his furniture, then in the house, to Mrs. Fuller, and intended to sublet to her, but looked to appellant for the rent. When she left the premises, she was in arrears in the rent in the sum of at least $50, and appellant paid it. No one else was ever in charge of the premises with the knowledge or consent of appellee, and all the payments of rent that were made up to December 23, 1908, were made by appellant. During the latter part of 1907 and 1908 he paid $1,640 on the rent. He did not at any time deny that he was liable for the rents.

The lease from Momsen to appellant was of the same purport as the one between appellant and appellee, and the extension by appellee, as agent of Momsen, was the same as on the other lease. Appellant sold the furniture in the house to Mrs. Porter on September 1, 1908, and she testified that she paid the rent to appellant for the use of the house. She also testified that the place was not rented to her by appellee, but that "Mr. Dockery sold me the Metropole rooming house and the other rooming house," meaning, of course, that he leased the rooming houses to her. Appellant held possession of the premises by virtue of the extension, paid the rent for over a year, and he is bound by the extension although he did not sign it.

The decision in Bullis v. Presidio Mining Co., 75 Tex. 540, 12 S. W. 397, sustains this court. In that case it is clearly held that a

contract involving land can be extended by a verbal agreement. The court said: "We feel compelled to treat the second contract as a distinct and independent one, and not a mere agreement for the extension of the time of performance of the first one. So treated, we think it was clearly within the statute of frauds, and appellant not having signed it was not bound by it." Appellant and appellee acted upon the extension given by appellee for over a year, and appellant paid rent and recognized the vitality of the lease contract during that time, and he cannot now set up the statute of frauds to defeat the contract. The evidence of appellant showed that he recognized the existence of the extension contract, and his actions in collecting the rent from the two women tenants, and then paying it to appellee, can be accounted for on no other reasonable hypothesis than that of his tenancy. He kept books which showed that the account for rents was carried under the name of "Metropole," and there were current entries made of the revenue from the Metropole and disbursements on account of the Metropole. Appellant paid the water and gas and electric light bills for the rooming house while Mrs. Fuller and Mrs. Porter were there. It is stated in Page on Contracts, § 733: "If a contract is a contract for some interest in realty and also one which cannot be performed within the year, as a contract for a lease for more than one year, the courts are divided as to whether part performance can take it out of the statute. Some courts hold that part performance takes such contract out of the statute; and others that it does not." The authorities cited in support of the text are two from Alabama and three from Iowa, the first supporting the theory that part performance takes the lease for more than a year out of the scope of the statute of frauds, while, under the peculiar statute of Iowa, the Supreme Court of that state holds a contrary doctrine. There is really no conflict, however, in the decisions as they are shaped by the statutes of the respective states. Eubank v. May Hardware Co., 105 Ala. 629, 17 South. 109; Dahm v. Barlow, 93 Ala. 120, 9 South. 593; Thorp v. Bradley, 75 Iowa, 50, 39 N. W. 177; Burden v. Knight, 82 Iowa, 584, 48 N. W. 985; Powell v. Crampton, 102 Iowa, 364, 71 N. W. 579.

In the first case cited—Eubank v. May Hardware Co.—the Supreme Court of Alabama said: "If the plaintiffs made a parol contract with the defendant corporation by which they rented to the defendant their storehouse for a term, commencing the 10th of February, 1890, and ending the 1st of October, 1894, at $75 per month, and under this contract the defendant entered into possession and kept it until the 1st day of October, 1892, paying until that time the monthly installments of rent, and then abandoned the possession and lease of its own accord, and without the consent or fault of the plaintiffs, the contract does not fall within the influence of the statute of frauds, and is as binding on the parties as if it had been in writing." In that case there was no extension of the lease period in writing, but an oral agreement between the lessor and a third person that the latter should have the same terms as the original lessee, as expressed in the written contract. The court said: "The terms of a contract already entered into between either of the parties to one proposed to be presently made and a third person may be adopted by the parties by reference merely, if the terms of such former contract are well understood between them, and, when thus adopted, will be as binding as if fully set out in the latter contract." It is true that the Alabama decisions were rendered under a statute which excepted from its nullifying influence oral sales and leases of lands when "the purchase money, or a portion thereof, is paid, and the purchaser put in possession of the land"; and in the statute of this state there is no such provision, but it has been held time and again that oral sales of land will be upheld where the vendee has made payments and has entered into possession of the land and made valuable improvements thereon, and this under a subdivision of the statute of frauds, which requires a memorandum in writing upon any contract for sale of land. That subdivision is as follows: "Upon any contract for the sale of real estate or the lease thereof for a longer term than one year." If part performance removes a sale from the influence of the statute, no valid reason can be given for holding that part performance would not remove a lease for more than a year from the influence of the statute.

We have discussed the statute of frauds, as applied to this case, as though it was an oral contract on which the action was based, but it is not. The original contracts were in writing signed by the parties thereto, and in those contracts were provisions permitting a renewal of the leases for two years by a notice on the part of the lessee. Appellant testified that the notice was given, and that renewed the contract in writing, as much so as though a new contract had been executed. The lessee had the right to a renewal, by giving written notice to the lessor, 30 days prior to the expiration of the lease. The lessor had the right to waive the written notice, and the lease was renewed under the terms of the original contract, without any further writing. House v. Burr, 24 Barb. (N. Y.) 525. This proposition is unanswerable when a renewal in writing has been entered upon the back of the contracts and signed by the lessor. Appellant alleges that a renewal was made by appellee, but to Mrs. Fuller, instead of him. This was denied by appellee, who testified that he had no dealings with Mrs. Fuller,

and that copies of the renewals signed by her were so signed without his knowledge or consent. In the case of Noland v. Cincinnati Cooperage Co., 82 S. W. 627, a lease contract for 10 years was signed by the lessors, but not by the lessee, but it entered upon the premises and began to use them and paid $50, a cash payment referred to in the lease. The Court of Appeals of Kentucky said: "It is insisted for appellee that no action can be maintained against it on the contract, because it did not sign the lease and the contract is not one to be performed in one year from its making. But appellee accepted the lease, and, after taking possession of the property under it, it will not be permitted to keep the property and avoid the payment of the contract price." Also, in the case of Belcher v. Schmidt, 132 S. W. 833, the Court of Civil Appeals of the Second Supreme Judicial District held: "The contention presented by one of the special exceptions was that the contract alleged, being in parol, could not be enforced because in contravention of the statute of frauds. Accepting the allegations in the petition as true, plaintiff had transferred the lease to the defendant, delivered possession of the land, and had rendered all the services which he had agreed to perform. Defendant had accepted the lease, had gone into possession of the land, and had used it. If, in any event, it could be said that the agreement when first made came within the purview of our statute of frauds (Sayles' Ann. Civ. St. 1897, art. 2543), that statute had no application after plaintiff had fully performed the obligations imposed upon him by the terms of the contract, and defendants had accepted the benefits of such performance."

The motion for rehearing is overruled.