FOLMAR v. THOMAS et al. (No. 5787.)

(Court of Civil Appeals of Texas. Austin. May 23, 1917. Rehearing Denied June 27, 1917.)

1. CONTRACTS &⁼⁼⁼9(1)—DESCRIPTION OF PROP-ERTY.

Unless the description of real property sought to be covered by a written contract is so defective as to render it manifest that the property cannot be identified by the aid of extrinsic testimony, the contract will not be declared void, though there is uncertainty and ambiguity in the description.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–15, 17, 19, 20.]

2. LANDLORD AND TENANT &⁼⁼⁼24(3)—LEASE CONTRACT—DESCRIPTION OF PROPERTY—UN-CERTAINTY.

A lease contract obligating the lessee to cultivate, erect buildings, etc., provided that it covered 300 acres of land "on the Thorndyke place near Gause." The lessor owned a tract of 470 acres near the town of Gause known as the Thorndyke place, and the parties living in the vicinity knew the fact of ownership, and that 170 acres were in cultivation. In the lessor's action against the assignee of the lessee the petition alleged that the lessee and defendants took possession of the 300 uncultivated acres and constructed rent houses on a portion, etc. Held that, in view of the allegations of the petition, the contract was not void for uncertainty of description of the property, though it did not specify what particular 200 acres of the 300 uncultivated acres owned by plaintiff were to be put in cultivation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 64.]

3. FRAUDS, STATUTE OF &⁼⁼⁼129(3)—LANDLORD AND TENANT—LEASE CONTRACT—PARTIAL PERFORMANCE—INSUFFICIENCY OF DESCRIP-TION.

A contract for the lease of land, the terms of which have been complied with by the lessor, partially complied with by the lessee, and under which the lessee has taken possession and received benefits for the contract term, is not within the statute of frauds, and is enforceable irrespective of its validity when executed, and the lessee cannot escape liability under such contract by asserting its invalidity for insufficient description of the land or for other cause.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 289–291.]

4. LANDLORD AND TENANT &⁼⁼⁼157(1)—APPLI-CATION OF LEASE CONTRACT—OBLIGATION OF LESSEES.

Where the lessees of land by contract obligating them to cultivate, build houses, etc., undertook to apply the contract, which purported to cover 200 acres as to cultivation, to plaintiff's uncultivated 300 acres, the obligation rested on them to put 200 acres in a reasonably good state of cultivation, and to surround them with a reasonably good fence, as was commonly done by persons of ordinary prudence, and the same rule was applicable in determining the boundary lines between the 200 acres to be placed in cultivation and 100 acres to be fenced for use as a pasture.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572.]

5. LANDLORD AND TENANT &⁼⁼⁼157(1)—LEASE CONTRACT—OBLIGATION TO SINK WELLS, ETC.

Where a lease contract obligated the tenant to erect houses and cribs and to sink wells to obtain water for domestic uses, but did not state the character of such improvements, the lessee and his successors were under obligation to spend a reasonable amount of money and labor to construct such wells as were in general use in the locality, also to construct reasonably good houses and cribs.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572.]

6. LANDLORD AND TENANT &⁼⁼⁼157(1)—COVE-NANTS FOR IMPROVEMENTS—CONSTRUCTION—BUILDING CONTRACT.

In construing lessee's building contract, or contract for some other improvements, which does not contain full specifications of the structure to be made, due consideration should be given the attending circumstances, the contemplation of the parties, and the general character, uses, and purposes of the improvements, and the contract should receive a reasonable construction to render it equitable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572.]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Suit by J. T. Folmar against P. H. Thomas and others. From a judgment dismissing the suit, plaintiff appeals. Reversed, and cause remanded.

Henderson, Kidd & Gillis, of Cameron, for appellant. Morrison & Lewis and Chambers & Baskin, all of Cameron, for appellees.

KEY, C. J. Appellant is prosecuting this appeal and complaining of the action of the trial court in sustaining a general demurrer and several special exceptions to his petition, and dismissing his suit. We copy the following statement from appellees' brief:

"This action was begun in the district court of Milam county by the appellant, J. T. Folmar, as plaintiff, against the appellees Thomas & Sons, as principal, and A. J. Rhodes and J. A. Ely, as sureties, for damages alleged to have accrued to the appellant by reason of the failure of Thomas & Sons to fulfill and perform the obligations and requirements of a certain written contract which had been executed between the appellant, Folmar, and one Z. S. Roque, and which last-named contract was in words and figures as follows:

"'Know all men by these presents that I, J. T. Folmar, party of the first part, do hereby agree to lease to Z. S. Roque, party of the second part, until January 1, 1915, 200 acres of land on the Thorndyke place near Gause for the following consideration: Said Z. S. Roque in payment for wood on said tract of land and the use of the land for the time during this date and January 1, 1915, is to erect at his expense 4 rent houses, 8 cribs, and is to dig 4 wells on said place (J. T. Folmar, party of the first part, having the right to select locations for said rent houses and cribs and wells); further said rent houses to be built not later than the following dates: First house to be built in 1910, and to consist of three rooms 16x16 feet each room sealed overhead, with gallery in front, 2 cribs, good log cribs, 12x12 feet, covered with corrugated iron, also to be built in 1910. Second house to be like first house, together with 2 cribs built same as two cribs to be erected not later than 1911. Third house and two cribs to be built the same as above-mentioned houses to be erected not later than 1912. Fourth house and two cribs to be erected not later than 1913, and to be built like above-mentioned houses. In addition said Z. S. Roque, party of the first part, in further consideration, is to dig four

&⁼⁼⁼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

wells on said 200-acre tract of land, one each year from date of this instrument, 1910, 1911, 1912, 1913.

" 'Z. S. Roque, party of the second part, hereby agrees to put said 200 acres of land in good state of cultivation by the first day of January, 1915, to clear and cut off all trees and brush and to turn said land over to said J. T. Folmar, party of the second part, on January 1, 1915; further, J. T. Folmar, party of the second part, agrees to allow Z. S. Roque the use for a pasture of all that land outlying and belonging to Thorndyke place for the consideration that Z. S. Roque, party of the first part, agrees to place a good four barb wire fence with posts every 8 feet around said 200-acre tract of land to be erected during the lifetime of this lease.'

"It was alleged that before the completion of the contract by Roque he had departed this life, and that the plaintiff had made a contract of settlement with the surviving widow of Roque, and claimed the right of possession to the land mentioned in the contract, and that the appellees Thomas & Sons were in possession of the land and claimed the right to possess the same by virtue of an assignment of the contract from Roque, and that these conflicting claims resulted in litigation between Thomas & Sons and the appellant, Folmar, and that this litigation was compromised on November 27, 1912, and at which time, the appellees Thomas & Sons, as principals, and the appellees A. J. Rhodes and J. A. Ely, as sureties, made, executed and delivered, to the appellant, Folmar, a contract as follows:

" 'Know all men by these presents that whereas, heretofore, on the 31st day of January, 1910, J. T. Folmar and Z. S. Roque made and entered into certain contract in writing bearing date last above written, and a copy of which said contract is hereto attached, and the same is recorded in Volume 110, page 33, of the Deed Records of Milam County, Tex.; and

" 'Whereas, afterwards the said Z. S. Roque assigned, transferred, and delivered said contract to Thomas & Sons, a firm composed of P. H. Thomas, R. M. Thomas, and Mrs. Lizzie Thomas, and that said last-named parties went into the actual possession of the land described in said contract, and are now in the peaceable possession of said land, and the said J. T. Folmar here now consents to such transfer and assignment of lease contract from the beginning; and

" 'Whereas, the parties hereto and the parties plaintiff and defendant in said two lawsuits have settled, compromised, and adjusted all of the matters and things in issue and in controversy in said two lawsuits; and

" 'Whereas, three certain houses under the terms of said contract have been erected and constructed upon said premises under the direction and supervision of the said J. T. Folmar, and whereas, he has heretofore accepted said houses as being in compliance with the specifications of such three houses contained in said contract, and the same are here now accepted as being in compliance with such specifications:

" 'Now, therefore, in consideration of the settlement of all of said issues and controversies between the parties hereto, it is hereby agreed by the said J. T. Folmar and said firm of Thomas & Sons that said two suits shall be dismissed from the docket of said court as settled, and that each party thereto shall assume and pay all of the cost properly and legally chargeable against him respectively in each of said suits.

" 'It is further agreed between the parties that said Thomas & Sons shall continue in possession of said lease until its expiration on the 1st day of January, 1915, and the said J. T. Folmar here now guarantees that he will not interrupt or interfere with said Thomas & Sons in the possession of said premises until the ex-

piration of said lease, and that the said Thomas & Sons, a firm as aforesaid, hereby agree, obligate, and bind themselves to carry out and perform the conditions, agreements, and stipulations of the said Z. S. Roque in the said contract in manner and form as therein provided, including the particulars in which the said Roque failed to perform under the terms thereof, and for the faithful performance on the part of said Thomas & Sons for the agreements and covenants herein made, and for the faithful performance of the stipulations of said contract hereto attached in accordance with the meaning and tenor hereinabove expressed, they here now as principals and the other subscribers hereto as sureties bind and obligate themselves unto the said J. T. Folmar in the sum of twenty-five hundred dollars ($2,500), for the payment of which well and truly to be made they hereby bind themselves, their heirs, executors, administrators, and assigns.'

"The plaintiff alleged that after the execution of the last above contract that he delivered the possession of the 200 acres of land to the appellees Thomas & Sons, and that he had performed all of the obligations and agreements chargeable against him, and that the Thomases had failed and refused to meet their obligations under the said contract, and had failed and refused to perform and comply with the said Roque's part of the contract in many specific and enumerated particulars, which will be noticed hereafter."

We also make the following additional statement concerning plaintiffs' pleadings: He alleged:

"That at the time he and the said Z. S. Roque entered into the contract they were both residents of Milam county, Tex., and resided near Gause, which is a town in said county, and the tract of land referred to in said contract as '200 acres of land on the Thorndyke place, near Gause,' is a part of a tract of 470 acres on the Jennett Bowen League, in Milam county, Tex., then owned by plaintiff and commonly known as the Thorndyke place, and being the same conveyed to plaintiff by William Thorndyke by deed of date November 3, 1909, of record in Volume 95, page 185, Deed Records of Milam County, Tex., and beginning at the N. W. corner of said Jennett Bowen league for the N. W. corner of this tract, from which a P. O. brs. S. 30° E. 11 vrs.; thence N. 60° E. 1,336 vrs. with the N. line of the Jennett Bowen league, same being the S. line of the A. W. Sullivan ⅓ league to N. W. corner of the Dallas land for corner of this tract; thence S. 30° E. 2,000 vrs. with the W. line of said Dallas land to its S. W. corner for corner of this tract; thence S. 60° W. 1,336 vrs. with the S. line of the M. Farley 640-acre survey, same being the N. line of the B. L. Ham 229 acres, to a corner in the N. line of the Jennett Bowen league, and being also the E. line of the Samuel Chair survey; thence N. 30° W. 2,000 vrs. with the W. line of the Jennett league, same being the E. line of the Samuel Chair league, except, however, 2 acres in the N. W. corner.

"That at the time said contract was so made about 170 acres of said tract was inclosed and in a state of cultivation, and the remainder, being about 300 acres, was uninclosed and covered with a growth of timber, and said entire tract of land was commonly known as the Thorndyke tract, and was at that time so known to said Roque and to each of the defendants to this suit; and the said 200 acres to be so placed in cultivation by said Roque under said contract was a part of the uninclosed and timber portion of said tract, and the part to be so inclosed by him as a pasture, as specified in said contract, was the remainder of said uninclosed portion of said Thorndyke tract.

"Said Thorndyke tract of land is situated

about 2 miles from the town of Gause, in Milam county, Tex., the said town of Gause being an old and well-established town, having been in existence for about 40 years, and each and all of said defendants resided in said town at the time said contract was so made, and have all resided there continuously since, except the defendant P. H. Thomas, who resides on a farm about 4 miles from said town of Gause.

"That immediately after said contract was so made by plaintiff and said Roque the said Roque entered into possession of said uninclosed portion of said Thorndyke tract, and so continued in the actual possession thereof, carrying out his contract, until the time of his death and the assumption thereof by Thomas & Sons, as alleged in plaintiff's petition, and the said Roque had cleared a portion of said land and placed some of the improvements thereon, as stipulated in the contract, and when the said Thomas & Sons assumed the performance of said contract, they took immediate possession of said premises, and were in possession thereof for the purpose of carrying out and performing said contract at the time said bond sued on herein was executed by the defendants in this suit, and said defendants, and each of them, were then and there fully informed and knew that the premises mentioned in said contract were the same then and there in possession of said Thomas & Sons and which previously had been in possession of the said Roque, and that the same was the land referred to in the contracts set out in plaintiff's petition, and the said Thomas & Sons, in pursuance of their said contract and for the purpose of carrying it out, continued in possession of said premises until the expiration of the time or term of said Roque contract, to wit, January 1, 1915, and so held the same under the terms of said contract and used, occupied, and enjoyed the fruits and revenue thereof under the terms and for the time of said Roque's contract.

"And plaintiff further shows that a portion of said land, to wit, about 170 acres, had been in cultivation at the time of the execution of his contract with said Roque for a number of years, and, as aforesaid, said tract of land was well known as the Thorndyke tract, and that said land so known as the Thorndyke tract or Thorndyke place is the only tract of land near the town of Gause known as the Thorndyke place.

"Plaintiff reaffirms all of the foregoing allegations, and further says that at the date of the bond executed by defendants and sued on by plaintiff the defendants Thomas & Sons were in possession of the land in question, claiming the right of possession thereof and had instituted suit against plaintiff to enjoin him from taking possession of said land, all of which was known to the defendants Rhoades and Ely, sureties on said bond, that said original contract between plaintiff and Roque has expired, and that said contract has been fully executed on the part of plaintiff and fully executed on the part of the said Z. S. Roque and the defendants Thomas & Sons, except as to the breaches complained of in plaintiff's second amended original petition, and that the said Z. S. Roque and the defendants Thomas & Sons have recovered and enjoyed the benefits of said contract. Wherefore plaintiff represents and shows to the court that the defendants are estopped from setting up a misdescription of said land and from avoiding their obligations under the contract and bond sued on in this cause."

The plaintiffs not only alleged that the defendants Thomas & Sons had entered into a contract by which they became bound to fulfill the obligations of Z. S. Roque, but also alleged that they had partially performed the contract as to about 180 acres, but that they had not done so in the manner required by the terms of the contract, in that they had not removed all the trees, etc., therefrom, and had not placed a reasonably good fence around same, and had not properly plowed the ground, and had unreasonably placed the boundaries of the 180 acres, which they pretended to have put in cultivation in such an irregular shape as not to be in compliance with the contract. It was also alleged that they had pretended to build certain cribs and dig certain wells, and construct certain fences, but that the same were not done in the manner required by the contract. Attached to the plaintiff's petition, and made a part thereof, was a sketch of the Thorndyke 470-acre tract of land, showing the 170 acres on the north end thereof, which was in cultivation at the time the contract was made, and the remaining 300 acres which the plaintiff alleged Z. S. Roque and the defendants Thomas & Sons took possession of under their contracts with the plaintiff, and that they held and used the same during the entire period of the contract.

## Opinion.

In the appellant's brief the action of the trial court in sustaining the general demurrer and special exceptions to appellant's petition is assigned as error, and we sustain the assignments.

The main point which seems to be relied upon by appellees' counsel is the contention that the contract is void for uncertainty of description of the land, as well as uncertainty of description of the character of improvements to be placed thereon by Z. S. Roque and appellees Thomas & Sons, and that, as the verbal contract related to the lease of land for a longer period than one year, it is within the statute of frauds, and therefore void.

[1] Unless the description of property sought to be covered by a written contract is so defective as to render it manifest that the property cannot be identified by the aid of extrinsic testimony, such contract will not be declared void, although there may be uncertainty and ambiguity in the description. Wilson v. Smith, 50 Tex. 365; Pierson v. Sanger Bros., 93 Tex. 163, 53 S. W. 1012.

The facts alleged in plaintiff's pleading show that at the time the contract was made appellant owned a tract of 470 acres of land near the town of Gause, in Milam county, Tex., known as the Thorndyke place; that the parties to the contract lived in that vicinity and knew the fact that the plaintiff owned that tract of land, and also knew that 170 acres of it was in cultivation, and as the contract shows on its face that it was to apply to 300 acres of the Thorndyke place, and to land not in cultivation, it is manifest that the parties intended that it should apply to all the Thorndyke tract which was not in cultivation. But it is urged on behalf of appel-

lees that the contract did not specify what particular 200 acres of the 300 acres was to be put in cultivation, and that for that reason it was void upon its face.

[2] The point referred to is not free from difficulty, but we have reached the conclusion that such difficulty has been removed by the allegations in plaintiff's petition to the effect that Roque and the defendants Thomas & Sons took possession of the 300 acres of land, constructed certain rent houses on a portion thereof, and pretended to construct the other improvements required by the contract to the extent of 180 acres. The allegations referred to, if true, show that Roque and the defendants Thomas & Sons have construed the contract as to what particular portion of the 300 acres should be put in cultivation and otherwise improved, at least to the extent of 180 acres; and as the petition charges that they breached the contract in reference to the improvements placed upon that 180 acres, it undoubtedly states a good cause of action to that extent at least.

[3] A contract for the lease of land, the terms of which have been complied with by the lessor, and partially complied with by the lessee, and under which the lessee has taken possession and received benefits for the contract term, is not within the operation of the statute of frauds, and is enforceable irrespective of its validity when executed; and the lessee cannot escape liability under such contract by asserting its invalidity for insufficient description of the land, or for other cause. Wanhscaffe v. Pontoja, 63 S. W. 663; Alford Bros. v. Williams, 41 Tex. Civ. App. 436, 91 S. W. 637; Taffinder v. Merrill, 61 S. W. 936; Dockery v. Thorne, 135 S. W. 593; Garrett v. Danner, 146 S. W. 678; Ry. Co. v. Settegast, 79 Tex. 261, 15 S. W. 228.

[4] Inasmuch as the lessees undertook to apply the contract to the 300 acres of land, we think the obligation rested upon them to put 200 acres thereof in a reasonably good state of cultivation, and to surround the same with a reasonably good fence, such as was commonly done by persons of ordinary prudence; and we think the same rule should be applied in determining the boundary lines between the 200 acres to be placed in cultivation and the 100 acres to be fenced for use as a pasture.

[5] As to the houses, cribs, and wells, the same rule should be applied, in so far as the contract omitted to state the character of such improvements. Manifestly the purpose sought to be accomplished by the stipulation requiring the lessee to dig certain wells to obtain water for domestic uses; and while the contract does not guarantee that water should be procured, and does not specifically state how deep the wells should be, nor the character thereof, we hold that it placed upon the lessee and his successors an obligation to expend a reasonable amount of money or labor for the purpose of constructing such wells as are in general use in that locality, and the petition alleged, in substance, that the lessees had failed to perform that obligation. Similar allegations were made in reference to the cribs and fencing, and we hold that the court erred in sustaining exceptions to the allegations referred to.

[6] In construing a building contract, or contract for other improvements, which does not contain full specifications of the structure to be made, due consideration should be given to the attending circumstances, and to the contemplation of the parties, and the general character, uses, and purposes of such improvements; and, thus considered, the contract should receive a reasonable construction such as will render it equitable between the parties. Harrell v. Zimpleman, 66 Tex. 294, 17 S. W. 478; Dwyer v. City of Brenham, 70 Tex. 32, 7 S. W. 598; Parks v. O'Connor, 70 Tex. 390, 8 S. W. 104; Chapman v. Warden, 50 Tex. Civ. App. 282, 110 S. W. 533; Hartford M. Co. v. Hartford T. W. Co. (Ky.) 121 S. W. 479.

For the reasons stated, the judgment of the trial court will be reversed, and the cause remanded for a trial consistent with this opinion.

Reversed and remanded.