Tom H. **MOONEY**, Independent Executor of the Estate of Henry E. English, Deceased, Appellant,

v.

Richard C. **INGRAM**, Appellee.

No. 19014.

Court of Civil Appeals of Texas, Dallas.

Jan. 21, 1977.

Rehearing Denied Feb. 17, 1977.

Logan Ford, J. Dan Bohannan, Burford, Ryburn & Ford, Dallas, for appellant.

Earl Luna, Luna, Murto & Sibley, Dallas, for appellee.

GUITTARD, Chief Justice.

Richard Ingram sued Henry English on a written contract for a share of the profits on sale of a ranch. The contract provides that English would reserve from the sale a part of the ranch on which the improvements were located, to be determined by a survey. No survey was made, and English later sold the entire ranch, but refused to pay Ingram any part of the profits. After suit was filed, English died and the suit proceeded against his executor. The trial court rendered judgment against the executor, based on a jury verdict, for $249,527.93, representing one-fourth of the profits from the sale of the entire ranch. The executor appeals on the ground, among others, that the contract is unenforceable because the description of the portion of the ranch in which Ingram was alleged to have a profit participation was indefinite and uncertain. We agree, and, accordingly, we reverse and render judgment in favor of the executor.

The contract in question is in the form of a letter dated April 17, 1968, addressed to Ingram and signed by English, as follows:

In connection with the land located in Collin County, Texas, which I purchased from J. Garland Cook and wife, Flora Lou Cook, as evidenced by deed dated October 9, 1967, and recorded in Volume 698, Page 94 of the Deed Records of Collin County, Texas, said property being known as the Flying "M" Ranch property, I offer to you the following proposal:

I propose to carve out of the above described land a rectangular tract sufficiently large to take in the main house, the barns, stables and pens, and extending back far enough to take in the lake. The exact dimensions will, of course, have to be determined by survey.

The foregoing tract of land I propose to reserve entirely unto myself for such

use as I care to make of it. With respect to the remainder of the land, however, and *in consideration of services rendered and to be rendered by you during the time I am the owner of said lands in helping to manage and operate the same, and helping to negotiate any sale thereof,* I offer to pay to you a sum equal to one-fourth of the "net profits" which may be realized out of any sale or sales of said "remaining lands" (the term "remaining lands" means all of the lands save and except the tract carved out which I have above described). Further, I offer that in the event of your death prior to the sale of all of the "remaining lands", the amount which I offer to pay you will be paid over to your surviving widow, provided you are survived by her.

The term "net profits" as used herein will be calculated as follows: From the net sales price realized from the sale of the "remaining lands" (which term shall mean the gross sale price less expenses of sale) there shall be deducted all moneys which I shall have paid out in connection with the acquisition of the whole of the lands constituting the Flying "M" Ranch. There shall also be deducted all moneys which I shall have paid out in placing permanent improvements on said lands. The term "moneys paid out" shall include all such moneys, whether paid out in the form of purchase price, interest or expense, so long as they were incurred in connection with the acquisition thereof or the making of permanent improvements thereon. The term "moneys paid out" shall not include, however, moneys paid out for purchase of cattle and other personal property situated on said lands. The difference between the net sale price of the "remaining lands" and the sum total of the moneys paid out to be deducted therefrom shall constitute the "net profits". Your share of the money equal to the "net profits", as herein defined, will be paid to you as and when "net profits" are received by me.

Your signature signifying the acceptance of this offer on the bottom of this letter will constitute a contract between us. When so accepted, such contract will be binding upon me and upon my heirs, executors, administrators and assigns as an enforceable obligation against me and my estate. [emphasis added]

Ingram accepted the proposal on April 18, 1968, by signing at the bottom as suggested. Shortly afterward he moved to the ranch, and he managed it until October 1968, when English terminated his employment. Three years later, in November 1971, English sold the entire ranch, but declined to pay Ingram any part of the proceeds. Ingram did not participate in any of the negotiations for the sale.

The ranch consisted of approximately 1,370 acres. Although the area to be reserved from sale was never surveyed, as contemplated by the contract, plaintiff attempted to identify it generally at the trial by introducing the testimony of English's former wife, who was permitted to testify concerning the area which English told her they would "never sell," and to draw on one of the maps in evidence a pencil line illustrating her testimony. Plaintiff also introduced the testimony of a real estate expert, who testified that the "smallest possible rectangle" including the improvements and the closer of the two lakes on the property would include twenty-five to thirty-five acres, and would have a market value of between $80,000 and $90,000. The remaining land, in his opinion, would be worth between $850 and $1,000 per acre if the two tracts were sold together. This, he said, "would be more or less just raw land," because the reserved area would "take the heart out of the ranch and a lot of the beauty out of it." He did not identify any particular rectangle, and he testified that an infinite number of possible rectangles could be drawn in keeping the contract.

Plaintiff's suit, however, is not based on any attempt to identify the reserved area and compute the profit from sale of the "remaining lands." He sued for one-fourth of the profits from sale of the entire ranch, and he takes the position that since English sold the ranch without any survey of the reserved area, plaintiff was entitled to one-

fourth of the entire profit. On this theory the trial court submitted issues to the jury and, based on the jury's answers, rendered judgment for one-fourth of the profit from the sale of the entire ranch.

■ The executor contends that the contract is void and unenforceable because the description of that portion of the ranch in which plaintiff is alleged to have a profit participation is too vague, indefinite, and uncertain, and in this connection he insists that the contract cannot be interpreted as providing for plaintiff a profit participation in the entire property. We agree. The contract is not, in itself, sufficiently definite to provide a measure of plaintiff's recovery. The amount of compensation for plaintiff's services was made to depend upon future events that never took place. According to the contract, English was first to have a survey made of the land he proposed to reserve, and then he was to sell the "remaining lands" for a price over and above his investment in the ranch before plaintiff would be entitled to any share in the profits. Since these events never occurred, the court has no means of determining the amount that would be due to plaintiff if English had fully performed. Consequently, the contract is too indefinite to support the damages awarded by the trial court.

■ In this respect the case is like *Miller v. Vaughn & Taylor Construction Co.,* 345 S.W.2d 852, 853–54 (Tex.Civ.App., Fort Worth, 1961, writ ref'd n. r. e.) where an auctioneer was sued for breach of a written contract to sell property "as per list prepared by owner." No list was ever prepared, and the contract was held to be unenforceable because the property to be sold was a material term left for future determination. Other authorities support the rule that there is no enforceable contract where the agreement of the parties leaves an essential term for later determination and it is never determined. *H. B. Zachry Co. v. Maerz,* 223 S.W.2d 552, 554 (Tex.Civ.App., San Antonio, 1949, no writ); *Gordon v. Emerson Shoe Co.,* 242 S.W. 791, 795 (Tex.Civ.App., Beaumont, 1922, no writ); *Hume v. Bogle,* 204 S.W. 673, 674–75 (Tex.Civ.App., Austin, 1918, no writ); *El Paso Gas, Electric Light, & Power Co. v. City of El Paso,* 22 Tex.Civ. App. 309, 54 S.W. 798, 800 (1899, writ ref'd); and see *Stekoll Petroleum Co. v. Hamilton,* 152 Tex. 182, 255 S.W.2d 187, 192 (1953).

Plaintiff insists that since the contract does not purport to bind English to transfer an interest in the land itself, but only promises him a share in the profit from a sale, the land need not be described with the same degree of certainty as in a contract for sale of land. He relies on cases holding that in a suit for damages only reasonable certainty is required, including *Berne v. Keith,* 361 S.W.2d 592 (Tex.Civ.App., Houston, 1962, writ ref'd n. r. e.) and *Grimsley v. Life Ins. Co. of Virginia,* 154 S.W.2d 196 (Tex.Civ.App., Austin, 1941, writ ref'd n. r. e.). This contention would merit serious consideration if the present suit were based on an estimate of the damages according to the measure of compensation provided in the contract. Thus, a different question would be presented if plaintiff's expert witness had made some sort of estimate of the area which English proposed to reserve and then had allocated the proceeds from the sale of the ranch between this improved area and the remaining lands so that the court and jury could then find the estimated "net profit" from the sale of the "remaining lands" over the cost of acquiring the entire ranch and its improvements, as the contract provides. We need not decide whether plaintiff would be entitled to such a recovery since no such evidence or findings are before us, and even if such a record were presented, a substantial question would remain as to whether the contract is too indefinite to be enforced.

As we understand plaintiff's position on this appeal, he does not contend that the contract as originally drawn was sufficiently definite to provide the measure of compensation for plaintiff's services without further action on the part of English. He concedes that the land to be reserved by English was never identified, but he argues that English himself removed that uncertainty when he sold the entire ranch with-

out "carving out" any area to be reserved to himself. In this connection, plaintiff contends that the contract provided an option to English to reserve an area to be selected by him and that he exercised this option by sale of the entire ranch without making such a survey or such a reservation. Plaintiff insists that the measure of his compensation under the contract, therefore, is one-fourth of the profits realized from sale of the entire ranch.

We do not believe that the contract is subject to this interpretation. Central to English's proposal, as stated in the very beginning of the letter, is his intention "to carve out of the above described land a rectangular tract sufficiently large to take in the main house, the barns, stables and pens, and extending back far enough to take in the lake." Excluding this area, English proposes to pay plaintiff one-fourth of the profits realized from sale of the "remaining lands," which are defined to be "all of the lands save and except the tract carved out which I have above described." No uncertainty is expressed as to whether part of the land would be carved out and reserved from sale. The identity, however, is uncertain in that the reserved area is to be designated by English and located by survey. As plaintiff's own expert testified, the part to be reserved was the "heart" of the ranch, and the rest was "just raw land." There is not the slightest indication in the contract of any intention that Ingram should share in the profit from sale of this most valuable part of the property.

This interpretation is inescapable in view of the unusual contractual definition of the term "net profits," of which Ingram was to receive one-fourth. Under this definition, the term "net profits" is not simply the gain to be realized from the selling price over the cost of the land sold. It is rather the gain in the selling price of the "remaining lands" over the cost of acquisition of the entire ranch and its improvements. In other words, the parties intended that before any "net profits" would be recognized from sale of the "remaining lands," subject to Ingram's one-fourth interest, English should have the reserved area and its improvements free and clear. The "net profits" interest so defined was a substantially smaller interest, and less likely to be realized at all, than the gain that would be realized from sale of the entire ranch. Consequently, it is clear to us that the parties never intended that Ingram should receive a full quarter of the profit to be realized from the sale of the whole ranch and its improvements.

Plaintiff further contends that English removed any uncertainty with respect to land to be sold in his letter of October 8, 1968, terminating plaintiff's employment. This letter is as follows:

Dear Dick:

I am not satisfied with the manner in which you are operating the Flying "M" Ranch and do not intend to be bothered any more about it.

I am turning the place over to Haskell Gunter and will expect you to vacate the place at your earliest convenience. I do not expect to advance any more money or pay you any more salary until such time as I can sell the place at a profit after the interest and expenses are paid. If the place sells at a loss, in that case, there would be no profit to divide.

Yours very truly,
s/ Henry E. English

■ Plaintiff argues that since this letter evidences English's intent to pay for plaintiff's services when English "can sell the place at a profit," it amounts to exercise of his "option" to sell the entire ranch rather than only the lands "remaining" after designating by survey the area including the improvements. This argument rests on plaintiff's option theory, which we have already rejected as without support in the provisions of the contract. Moreover, the letter does not specify that "the place" English then intended to sell included the land on which the improvements were located, and, even if subject to that interpretation, it cannot be regarded as a binding contractual promise to pay plaintiff a full quarter of the profit from sale of the entire ranch since it is not based on any new

consideration. Consequently, we hold that this letter cannot be made the basis of any additional rights.

■ Plaintiff further contends that the contract provides a sufficiently definite measure of his compensation in view of his performance of his obligations under it, citing such cases as *Tanenbaum Textile Co. v. Sidran*, 423 S.W.2d 635, 637 (Tex.Civ.App., Dallas, 1967, writ ref'd n. r. e.); *Morgan v. Young*, 203 S.W.2d 837 (Tex.Civ.App., Beaumont, 1947, writ ref'd n. r. e.); and *Folmar v. Thomas*, 196 S.W. 861 (Tex.Civ.App., Austin, 1917, no writ). Under these cases a contract, though originally too indefinite, may nevertheless be enforced if performance by the parties has identified and made certain that which originally was left uncertain. This rule cannot properly be applied in the present case because no performance by the parties has served to identify the land which English proposed to carve out. Plaintiff contends that sale of the entire ranch served this purpose, but, as we have already explained, the contract cannot properly be interpreted as providing that plaintiff should receive one-fourth of the net profits from sale of the entire ranch. Neither has plaintiff established full performance on his part, as distinguished from breach by English preventing plaintiff's further performance. Plaintiff admits that he managed the ranch only a few months and that he had nothing to do with negotiating the sale. He alleges that he "fully performed all of said services which were required of him and which he was permitted to perform." The jury found that he "fully performed all of the services required of him in the agreement . . . which he was permitted to perform in helping Henry E. English, now deceased, to manage and operate and helping to negotiate any sale of the subject property." The executor attacks this issue on various grounds which we need not now consider, but even if considered most favorably to plaintiff, this finding establishes only that plaintiff did not breach the contract so as to justify English's termination of his employment in October 1968. Thus the recovery awarded by the trial court must be considered as damages for breach of an executory contract rather than compensation for services rendered insofar as plaintiff is allowed to recover the amount of the payment he expected to receive if both he and English had fully performed their contractual obligations.

If plaintiff had continued to manage the ranch during the whole time that English owned it and had helped to negotiate the sale of the entire ranch, he would have been in a stronger position to contend that English could not then avoid liability for a share in the profits because, in that situation, the evidence might raise the issue of modification of the original contract by the action of both parties. No such issue is raised here, since the undisputed evidence is that plaintiff's employment terminated in October 1968. Therefore, the present suit must be regarded as an action for damages for breach of an executory contract, and so considered, it fails because the contract is too indefinite to be enforced.

■ Plaintiff would apply to this contract the rule sometimes applied with respect to deeds, that if the description of the whole tract is sufficient, but there is an indefinite reservation or exception, title to the whole tract passes and only the reservation or exception fails, citing *Lewis v. Midgett*, 448 S.W.2d 548 (Tex.Civ.App., Tyler, 1969, no writ); *Fuentes v. Hirsch*, 472 S.W.2d 288 (Tex.Civ.App., El Paso, 1971, writ ref'd n. r. e.); and *De Roach v. Clardy*, 52 Tex.Civ.App. 233, 113 S.W. 22 (1908) (writ ref'd). These cases stand for the rule that after a vendor has sold land, delivered the deed, and transferred possession, he or his heirs will not be permitted to recover title to the entire property because of uncertainty of an exception for which the vendor was himself responsible. They do not support the proposition that if a contract provides for compensation for services based on profit from the sale of a part of a tract of land, but that part is never identified and the entire tract is sold, the compensation must then be based on the profit from the sale of the whole.

Even though no sufficiently definite contractual measure of compensation is provided under the circumstances shown in this record, Ingram is entitled, of course, to compensation for services actually performed. Although he did not help to negotiate the sale and he managed the ranch for only a brief period, he may recover the reasonable value of his services to the extent that they were accepted by English or were performed in accordance with the contract and to the extent that he has not already been paid. No special issue was submitted or requested on the value of the services actually performed, and, consequently, the judgment in his favor cannot be upheld on this ground. Since we hold that the contract does not support the judgment for one-fourth of the profits on sale of the entire ranch, that judgment must be reversed and judgment is here rendered for defendant.

Reversed and rendered.