## CHEVROLET MOTOR CO. OF TEXAS et al. v. MORRIS AUTO CO. (No. 9117.)

(Court of Civil Appeals of Texas. Dallas. June 28, 1924. Rehearing Denied Feb. 28, 1925.)

1. **Corporations** ⊖⟶630(6)—**Judgment may be rendered against a dissolved corporation.**

Since the amendment to Rev. St. art. 1206, by Acts 36 Leg. (1919) 2d Called Sess., c. 56 (Vernon's Ann. Civ. St. Supp. 1922, art. 1206), a judgment may be rendered against a dissolved corporation.

2. **Frauds, statute of** ⊖⟶49—**Oral contract for purchase of automobiles, performable within one year from date of contract, not void under statute.**

An oral contract, whereby plaintiffs were awarded right to purchase 500 automobiles as they should require them during the following year, could have been performed within one year from date of contract, and hence was not void under the statute of frauds.

3. **Corporations** ⊖⟶578—**Purchase of land by one selected to dissolve old corporation and organize new one with same name held not to vest old corporation with ownership of such land.**

Where one selected to dissolve a corporation and organize a new one with same name purchased land to be used as building site by new corporation, for which old corporation paid no consideration, nor acquired deed therefor, but which deed was held by purchaser until organization of new corporation, old corporation did not become owner of land merely because deed was in its name, but, as soon as second corporation came into legal existence, it was vested with legal title to such land.

---

⊖⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit by the Morris Auto Company against the Chevrolet Motor Company of Texas and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered in part, and affirmed in part.

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, and Lassiter & Harrison and R. M. Rowland, all of Fort Worth, for appellants.

M. M. Plowman, of Dallas, for appellee.

JONES, C. J. Appellants, the Chevrolet Motor Company of Texas, a dissolved corporation, the Chevrolet Motor Company of Texas, an existing corporation, W. S. Ballinger, A. B. C. Hardy, John H. Stearn, non-residents of the state of Texas and officers and trustees of the said dissolved corporation, appeal from a judgment in favor of appellee, Morris Auto Company, a partnership consisting of C. C. Morris, B. B. Phillips, and J. W. Phillips, and formerly of S. J. Ward, deceased, and for the benefit of whose estate the surviving partners maintain this suit. The judgment was in the sum of $12,404, with 6 per cent. interest from its date of February 6, 1923.

The material facts upon which this suit was based are as follows:

Appellees, on April 19, 1916, entered into a written contract with the Chevrolet Motor Company of Texas, dissolved, and which for brevity will be called the "first corporation," under which contract appellees were awarded a certain territory and had the right to purchase at wholesale prices all Chevrolet models and sell same to the retail trade in said territory; and, under certain conditions, were to be allowed certain other discounts in said wholesale price, such discounts, which were in the form of a bonus, to be determined on the completion of the contract. This right to purchase said cars was to begin on the date of the contract and end on the 31st day of July, 1916. Previous to and at the time this contract was awarded appellees they were told that, if they "made good," they would be awarded another contract to extend for a period of a year, beginning on August 1, 1916.

Appellees were successful in selling the cars purchased under this contract, and were told by the general manager of the first corporation that they had "made good" and would be awarded the contract for a year. On this statement appellees permanently moved to Dallas, leased office space in a building in the city of Dallas, and incurred, in advertising and other items, an expense of approximately $1,200. On July 5, 1916, appellees entered into an oral agreement with the general manager of said first corporation, under which appellees were awarded

the territory of Dallas county and under which they had the right to purchase, at wholesale prices, 500 Chevrolet automobiles of the models they should require during the year beginning the 1st of August, 1916, and ending the 31st of July, 1917. Neither the terms of this contract nor any memorandum thereof was committed to writing, but rested wholly in parol. Appellees incurred the expense above mentioned in reliance on this oral agreement, and the fact that they had incurred such expense was known to the manager of the said first corporation. Appellees operated under said oral contract from the 1st to the 8th of August, but had only purchased one of the cars to be allotted to them under said oral contract.

On the 8th of August, 1916, appellees were notified by a traveling agent of said first corporation that the agreement would not be carried out, and that the contract had been given to another firm for the territory included in appellees' contract. Appellees were not permitted to purchase any other cars under said contract.

On the 31st day of July, 1916, at the close of the written contract under which appellees operated, the first corporation was indebted to appellees for the additional discounts or bonuses allowed them under the terms of the said contract in the sum of $673, which has never been paid. However, the said first corporation offered to pay to appellees the sum of $364.65, claiming that said amount was all that was due them under said contract, and tendered said sum of money into court as full settlement of the said claim.

On the 16th day of September, 1916, this said first corporation was duly and legally dissolved by the voluntary act of its officers, directors, and stockholders. At the time of its dissolution appellants, W. S. Ballinger, a resident of the state of Michigan, A. B. C. Hardy, a resident of the state of New York, and John H. Stearn, a resident of the state of Illinois, were its directors, and appellant Ballinger was its president and treasurer, and appellant Hardy its vice president and secretary. At and previous to this time there were other Chevrolet motor car corporations, one known as the Chevrolet Motor Company of Michigan, incorporated under the laws of Michigan, and another known as the Chevrolet Motor Company, incorporated under the laws of Delaware. The said first corporation had a capital stock of $5,000, which was owned principally by the Michigan corporation. None of its stockholders were residents of this state.

In March, 1916, at a meeting of its directors and officers in the city of New York, it was determined to dissolve this said first corporation and to organize another corporation for the state of Texas with a capital stock of $600,000. This meeting was par-

ticipated in by certain citizens of Fort Worth, including N. S. Lassiter, attorney at law, and it was agreed between the Chevrolet officials, who were interested in organizing a new corporation, which, for brevity and convenience, will be termed the "second corporation," that a large assembly plant would be erected on land to be purchased in or near the city of Fort Worth, and that citizens of Fort Worth, Tex., would subscribe of the capital stock the sum of $250,000, and this should represent the preferred stock of the second corporation. The remainder of the capital stock of $350,000 was approximately all taken by the said Delaware corporation; the Michigan corporation having no interest therein, and the directors of the first corporation also having no interest in this second corporation.

For the purpose of consummating this plan of dissolution of the first corporation and the organizing of the second corporation and the collection of the $250,000 stock subscriptions by the Fort Worth citizens, N. S. Lassiter was selected and authorized to dissolve the first corporation under the law of the state of Texas and to organize the new corporation under said law and to select ground on which the assembly plant of the new corporation was to be erected.

Lassiter secured an option on seven acres of land owned by the K. N. Van Zandt estate, on what is known as Camp Bowie boulevard, near the city of Fort Worth. On July 12, 1916, a deed was executed by the owners of this land for a cash consideration of $7,000, naming the Chevrolet Motor Company of Texas as the grantee, and this deed was delivered to Lassiter. The consideration for the land was paid by Lassiter out of the money from the stock subscriptions to the second corporation. The deed remained in the custody of Lassiter until on or about the 20th of September, 1916, when it was duly filed for record.

During the months of August and September work on the erection of the assembly plant was begun, and several thousand dollars' worth of material was purchased and delivered at the site of the plant on the said seven acres of land. It was understood that the material delivered at the site of said plant was to build an assembly plant for the Chevrolet Motor Company of Texas.

The second corporation was organized and its charter filed by the secretary of state immediately after the dissolution of the first corporation, the charter being filed on or about the 18th of September, 1916, and this second corporation adopted the same name as the first corporation. At the time the deed to the seven acres of land was executed and the $7,000 paid, the only corporation in existence bearing the name of the grantee in the deed was the first corporation. This was true also at the time the material above mentioned was delivered at the plant. The second corporation occupied the same offices at the corner of Seventh and Throckmorten streets in the city of Fort Worth that the first corporation occupied. At the time of its dissolution the first corporation owned some automobiles and other personal property. The value of this personal property is not shown, but whatever it was it was taken possession of by the said Michigan corporation as the principal stockholder in said corporation. At the time of the dissolution of the first corporation Lassiter knew nothing of the claims of appellees to indebtedness due them.

In addition to the additional discount, or bonus, claimed to be due them appellees claimed damages in the sum of $35,500 by reason of the breach of contract by the first corporation.

The case went to trial on appellees' second amended original petition, in which, by appropriate pleadings, they sought to recover their said bonus claim and the other damages for breach of contract and to be reimbursed for the expenses of advertising and the expense growing out of their having leased a building in Dallas in reliance on said contract.

Appellees also alleged that the second corporation took over the assets of the first corporation; that the seven acres of land, together with the plant thereon, were the property of the first corporation, and had been taken over by the second corporation; and alleged that the second corporation, by operation of law, became trustee of said land for their benefit; and alleged, also, that the nonresident directors were under the law trustees in charge of said property, and that said property was charged by law with a lien for the payment of their debt, and sought to subject said property to the payment of their debt and damages.

Appellant first corporation filed a plea in abatement, in which the fact of its dissolution was set up, and that at the time it was sued it had no corporate existence and was incapable of either suing or being sued. Subject to the plea in abatement, it filed appropriate pleadings controverting appellees' right to recover anything against it save the said sum of $364.65 admitted to be due as bonus under the written contract. It denied ever having owned the seven acres of land or any of the improvements thereon; denied having any assets at the time the suit was filed; denied that its manager ever entered into the oral contract alleged by appellees; and denied the power of its manager to enter into any such contract as claimed by appellees.

In reply to this, appellee filed a supplemental petition in which it pleaded estoppel on the part of said first corporation to deny the power of its manager to enter into the con-

tract, and in which it also pleaded a ratification by the board of directors of said first corporation of the contract made.

Appellant, the said second corporation, adopted the pleadings of the first corporation, and also pleaded the two-year statute of limitation as against it, and pleaded that said oral contract was invalid under the statute of frauds. The nonresident appellants did not answer, and the court appointed an attorney to represent them, who filed a general demurrer and general denial in their behalf.

The case was tried before a jury and submitted on special issues, in which the jury found that appellees made the oral contract with appellants substantially as alleged in their petition; that appellants' general manager had power to make said contract; that said contract was entered into on the 5th day of July, 1916, to begin on the 1st day of August, 1916, and to continue until the 31st day of July, 1917; that under said contract appellees were to purchase from said first corporation and sell during the life of said contract 500 cars in Dallas county; that said oral contract contemplated the furnishing of service by appellees to Chevrolet car owners during the entire period ending July 31, 1917, and that it was not possible for this agreement of service to be completely performed before the end of the year terminating July 31, 1917; that said first corporation was indebted to appellees in the sum of $673 as bonus due on 48 cars purchased from said corporation under the written contract of April 19, 1916; that said seven-acre tract of land described in appellees' petition was owned by the said first corporation; that appellees had spent the sum of $981 for advertising the business under the oral contract, and had also incurred an expense of $250 in the lease of a building in Dallas in reliance upon said oral contract; that as a direct and proximate result of the breach of said oral contract by said first corporation appellees had suffered damages in the sum of $10,000.

After the return of the verdict, both appellees and appellants filed motion for judgment. Appellants also, subject to their motion for judgment, filed a motion for new trial and to set aside certain findings of the jury. The court overruled appellants' motion for judgment, but granted appellees' motion for judgment, and entered judgment against the first corporation in the sum of $12,404, with interest, and also entered judgment decreeing the title to seven acres of land in the first corporation, and also decreeing that the possession of said land by the second corporation was that of trustee for the first corporation. It was also decreed that the other appellants were trustees of the said property and judgment awarded against them only in such capacity. Execution was authorized against all of the appellants in the capacities named as to any other property that belonged to said first corporation. In other words, the judgment established the ownership of the seven-acre tract of land in the first corporation and foreclosed the statutory lien in favor of appellees on said land and against all the appellants as trustees of said property.

Appellants duly assigned error and have duly presented for the consideration of this court all of the issues hereinafter discussed. Those assignments that will be specially discussed are: (1) Did the court err in overruling the plea in abatement filed by the attorneys for the first corporation, it having been legally dissolved previous to the institution of the suit? (2) Was the oral contract in contravention of the statute of frauds? (3) Was the finding of the jury that the first corporation owned the seven-acre tract of land supported by the evidence? The other assignments of error have been carefully considered, and are overruled without discussion.

[1] Under article 1206, Revised Statutes, as amended by the acts of the Legislature of 1919 (2d Called Sess.) c. 56 (Vernon's Ann. Civ. St. Supp. 1922, art. 1206), this suit was authorized against the dissolved corporation, and the court did not err in overruling said appellants' plea in abatement, and did not err in awarding judgment against said dissolved corporation. Previous to this amendment of said article, such suit could not have been maintained. White v. Motor Car Co. (Tex. Com. App.) 228 S. W. 138.

The Thirty-Sixth Legislature, at its second called session, re-enacted all of said article 1206 just as it had hitherto existed, but added the following:

"Provided that the dissolution of a corporation shall not operate to abate, nor be construed as abating any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation and judgment shall be rendered as though the same was not dissolved, and in case no receiver has been appointed for said corporation, suit may be instituted on any claim against said corporation, as though the same had not been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved by whatever name they may be known in law, and judgment may be rendered as though the corporation had not been dissolved and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved."

[2] When the oral contract, as pleaded by appellees and found by the jury to have been entered into, is analyzed, it is not believed to be in contravention of the statute of frauds. While it is a contract in which appellees were allowed a period of time that

extended beyond one year from its date, yet it could have been completed within one year. Under its terms appellees were awarded the right to purchase 500 automobiles, to be sold in the county of Dallas. The purchase was to be made as they needed the cars. It was not a contract of personal service entered into on the 5th of July to begin on the 1st of August, 1916, and end on the 31st day of July, 1917, nor was it a contract in which appellees obligated themselves to purchase cars or to sell cars during that entire time. They were given the right to purchase 500 cars and sell them to the trade, provided they could sell same within the period of time prescribed by the contract. It could have been performed within the 12 months following its date, and, because of this fact, it was not void under the statute of frauds. Lennard v. Texarkana Lumber Co., 46 Tex. Civ. App. 402, 94 S. W. 385; Buchanan v. Bilger, 64 Tex. 589. This assignment of error is overruled.

[3] Is the verdict of the jury that the first corporation owned the seven-acre tract of land supported by the evidence? We have examined this evidence very closely and cannot find any support given this finding. The purchase of the land was negotiated by N. S. Lassiter, who had no interest in or connection with the first corporation save to secure its legal dissolution as a corporation. The purchase was to secure a building site for a plant that was to be erected by the second corporation not in existence at the time the purchase was made. The mere fact that the grantee in the deed to the land is the same name as the first corporation is not a sufficient circumstance to raise an issue of fact, when considered in the light of the existing facts, as to the ownership of this land. The deed was never delivered to the first corporation. The first corporation never paid a cent of the consideration. The deed was held by Lassiter until such time as the new corporation came into existence, when it was placed of record by the second corporation. Lassiter's possession of the deed was in the capacity of trustee for the subscribing stockholders of the second corporation, and, as soon as this corporation came into legal existence, it was vested with the legal title to the land. We therefore sustain this assignment of error, and hold that no issue of fact was made by the evidence that warranted the submission of this issue to the jury and, of course, no evidence that supports such a finding.

In accordance with the views herein expressed, this cause is reversed and rendered in favor of appellant, the second corporation, and appellees are denied any foreclosure on the said land or the levy of a writ of execution on same. In all other respects, it is the opinion of the court that the judgment should be affirmed.

Reversed and rendered in favor of the Chevrolet Motor Company of Texas, the new or second corporation, and affirmed in all other respects as to the other appellants.

Reversed and rendered in part, and affirmed in part.

### On Motion for Rehearing.

In an opinion filed June 30, 1924, this court disposed of this case in the manner shown by such opinion. In appellants' motion for rehearing, the attention of this court was first called to the opinion in the case of Lyon-Gray Lbr. Co. v. Gibralter Life Ins. Co. (Tex. Civ. App.) 247 S. W. 652, in which it was held that the amendment to article 1206, Revised Statutes, by the Thirty-Sixth Legislature, authorizing a judgment against a dissolved corporation on a suit for a claim that was pending prior to the dissolution, did not apply to a corporation that had been dissolved at a date preceding this enactment. It was urged that under authority of this case this court was in error in affirming the judgment against a dissolved corporation, for the reason that said enactment was not passed until 1919 and that the first Chevrolet corporation was legally dissolved on September 16, 1916, as stated in the opinion in this case.

As a writ of error had been granted by the Supreme Court in said cause, and said cause had been transferred to the Commission of Appeals and already set for submission, this court deemed it wise to await the opinion of said court before acting on the motion for rehearing. On February 18, 1925, the Commission of Appeals rendered its judgment on approval by the Supreme Court, in which the case of Lyon-Gray Lumber v. Gibraltar Life Ins. Co., 269 S. W. 80, was reversed and the doctrine announced sustaining this court's disposition of that issue. In re-examining this issue on this motion for rehearing we have discovered that we were in error in stating that this suit was originally filed in the district court subsequent to the dissolution of the old Chevrolet corporation. The original petition was filed by appellee against the old Chevrolet Motor Company on September 11, 1916, and the corporation was not dissolved until September 16, 1916, so that, at the time of the dissolution of said corporation, this was a pending suit.

We have carefully examined both the motion for rehearing filed by appellant and the one filed by appellee, with the result that we adhere to the former disposition of this case, and the motion of each party is overruled.