## STALLINGS v. SMITH. (No. 739.)

Court of Civil Appeals of Texas. Waco. Nov. 8, 1928.

Rehearing Denied Dec. 13, 1928.

Thos. R. Bond, of Terrell, for appellant.
Wynne & Wynne, of Kaufman, for appellee.

GALLAGHER, C. J. This suit was instituted by appellee, Albert Smith, against appellant, E. A. Stallings, to recover the sum of $1,847.72, which he claimed under the alternate provisions of a certain verbal contract pleaded by him. Appellee pleaded that appellant had laid out an addition to the city of Dallas, and was engaged in building houses thereon and selling or offering the same for sale or rental to persons desiring to reside in said addition; that such development of said addition contemplated the building of 100 houses; that appellee was constructing the houses built thereon by appellant on terms satisfactory to both of them; that when about 10 houses had been built it was found that the sale and rental of such houses was difficult because there were no water mains in said addition; that the city of Dallas refused to run a water main thereto, and that water could not be procured therefor from any other source on satisfactory terms; that appellant approached appellee and assured him that he

would finish building said addition as then laid out providing for 100 houses in the aggregate as aforesaid; that appellee proposed that appellee select a lot, bore a well, and install a water system; that appellant agreed in that connection to sell appellee a certain lot for the sum of $700 and finance the boring of the well and the installation of the water system, and agreed that appellee should repay appellant by his retaining the sum of $100 on the amount due appellee on each house thereafter constructed, and that he would credit the same on the cost of said lot, well, and water system until he was repaid in full; that in event appellant did not at once finish building the remainder of the 100 houses contemplated in developing said addition, or if he failed to secure title to said lot by September 15, 1926, he would repay appellee the entire cost incurred by him in boring said well and installing said water system, and would also pay him for all work he had done thereon; that appellant stated at the time that he knew that said undertaking on the part of appellee would not be profitable unless the entire addition was built up. Appellee further alleged in that connection that said proposition was made by appellant to him on January 16, 1926, and that at that time appellant did not have title to said addition, but had only an option entitling him to purchase the same on or before September 15th as aforesaid. He further alleged that, with the express understanding with appellant that the remainder of said houses were to be built immediately and that he would receive in September following a deed to the lot to be selected for the building of said well, he accepted said proposition, and, with the approval of appellant, selected a lot for which he agreed to pay him the sum of $700 in the manner aforesaid, bored a well, erected improvements, installed a water system, and furnished water to said addition. He further alleged that he continued building houses for appellant according to such contract until he had completed about 17 houses, when appellant claimed he was out of money and could not then further continue the development of said addition; that thereafter, on September 15th, he applied to appellant for a deed to said lot, and found that appellant had not procured title thereto, but had succeeded in having his option extended; that about January 1, 1927, no further houses having been built, and said addition being still furnished with water by said well and water system, appellee approached appellant and insisted upon appellant's paying him the sums expended in boring said well and installing said system; that he at that time exhibited to appellant an itemized account of moneys expended by him, being the account here sued on; and that appellant agreed to pay the same and made no complaint of any of the items thereof, and that appellant had wholly failed to comply with said promise. Appel-

lee further alleged that the total cost of the boring of said well and the installing of said water system was $2,203.21; that appellant had paid him thereon the sum of $355.49, leaving a balance of $1,847.72, for which he asked judgment.

Appellant denied all the allegations of appellee. He further pleaded that the contract for the building of said additional houses alleged by appellee, the making of which he denied, was not to be and could not have been completed within the period of one year, and invoked the Statute of Frauds (Vernon's Ann. Civ. St. 1925, art. 3995) in his defense.

The case was tried before a jury. At the conclusion of the evidence the court submitted a single issue as follows:

"Did the defendant, E. A. Stallings, agree that he would reimburse or refund to plaintiff, Albert Smith, all expenses for improvements placed by him on the lot in controversy in the event defendant failed to erect 100 houses in the addition in question, or secure for plaintiff a deed to said lot by September 15th, 1926?"

The jury answered said issue, "Yes," and the court entered judgment in favor of appellee against appellant for the sum of $1,810.-07, which judgment is here presented for review.

### Opinion.

Appellant's first proposition presents as ground for reversal the action of the court in overruling his general demurrer to appellee's petition. He contends in this connection that appellee's suit was for the recovery of the value of the improvements placed by him on said lot, and that appellee's account consisting of items of money expended for labor and material would not support such a recovery. We do not understand that appellee in his petition seeks a recovery for the value of the improvements placed by him upon said lot. He sued directly for the recovery of the money paid out by him in the construction of said improvements, and the itemized account attached to his petition consisted of items of money expended for labor and material to construct said improvements. Said proposition is overruled.

Appellant presents as ground for reversal a proposition complaining of the action of the court in submitting to the jury for determination the issue above recited. Appellant in his written objections to the submission of said issue asserted: (a) That appellee's pleadings did not raise said issue; (b) that the evidence did not raise an issue of a promise on the part of appellant to reimburse appellee for the money expended by him in making said improvements; and (c) that there was no evidence which warranted or justified the submission of said issue. We think the pleadings of appellee as hereinbefore recited were sufficient to raise the issue submitted and to justify the court in submitting the same.

Appellee testified concerning his original contract in part as follows:

"I told him (appellant) if he would sell me a lot on the end of Forney Avenue and finance the water works, I would put it in and pay him $100.00 every time I finished a building and for him to give me the contract for all the buildings; he said he thought that was all right, that he would do it. There was a provision that if he didn't get a deed so he could give me a deed to the lot on September 15th, 1926, or if he quit building, he would pay me back the money I had put in the plant. I agreed to that. I went to work on that agreement."

Appellee further testified that there was trouble in getting water for the parties residing in said addition, and that appellant said it was necessary to furnish water; that he built a water plant sufficient to serve 100 or more houses; that he did so because appellant had agreed to build up the addition, and that the addition was large enough to accommodate that number of houses; that he operated the water plant constructed by him until he left for a trip to Wyoming; that during his absence he left one Splawn in charge of the operation thereof. Splawn testified that he operated the plant and supplied water to the patrons thereof during the absence of appellee. Appellee further testified that he was absent on said trip about 30 days; that on his return he again resumed personal operation of said plant and continued such operation the remainder of the year; that appellant stopped the building of houses before he left on said trip; that after his return he asked appellant to resume the building of houses; that appellant did have him build two additional houses after his return, and again quit building, stating that he did so on account of lack of funds to continue the same. The testimony disclosed that apparently by mutual consent, appellee expended his own funds in the construction of said plant, except about $355 furnished by appellant. Appellee testified that the account attached to his petition was correct, and that the credit thereon was the amount so furnished by appellant toward the construction of said water plant; that appellant's bookkeeper kept his books in the construction of said plant; that appellant was furnished a copy of said account from time to time, and that appellant also examined the books a time or two; that appellant said there was no controversy about the account, that he just did not have the money to pay it. Appellee further testified that when he asked appellant for a deed to said lot on September 15, 1926, he said he had had his option extended. He further testified that when appellant refused to resume the building of houses he asked him for repayment of the money expended by him on said plant according to the agreement; that appellant said he would try to get the money; that he offered to take a note for the amount due

him, and appellant declined on the ground that it would affect his credit at the bank which was carrying his indebtedness. Appellant testified that he tried to settle with appellee by giving him some lots in Terrell. Appellant further testified that the title to the lot on which appellee's well and improvements were situated was in the Elliot estate, and that he did not acquire the title thereto until about the first of the year 1927. Appellant further testified that he held about $100 out of every house built by appellee after appellee agreed to improve said lot and install said water plant, but that he afterwards permitted appellee to draw the same to pay the expenses incurred in making said improvements. There was further testimony which we do not deem it necessary to recite. Appellee testified on cross-examination that appellant did not make a contract with him for building 100 houses, and that there was no specified time in which the houses were to be built or completed. The testimony shows that appellee's only interest in connection with said addition and the installation of said water system was his profits for building houses and the profits, if any, arising from the operation of such system. There were only 17 or 18 houses on said addition at the time appellant quit building, and there is no contention that said water system could have been operated at a profit with that limited number of patrons.

■ The evidence above recited justified the submission of the contentions of the parties to the jury for determination. There was no objection to the form of the issue submitted nor to the language in which it was expressed. There was no request for the submission of any other issue or issues in connection therewith. Appellant simply contended that there was no testimony authorizing the submission of said issue, or any other. Appellant in his argument under this proposition emphasizes the testimony of appellee that appellant did not agree to build 100 houses. Appellee did, however, testify that appellant agreed to build up the addition, that said addition would accommodate 100 houses or more, and by necessary inference that appellant agreed to continuously prosecute such building program, since he agreed to reimburse appellee for his expenditures in event he quit building. There was testimony sufficient to support a finding that appellant's agreement with appellee contemplated the building of 100 houses and that he intended to bind himself to do so. Had appellant objected to the language in which the issue submitted was expressed, the court would doubtless have made it conform to the very letter of the testimony.

■ Appellant, in connection with his objection to the submission of said issue, also requested the court to instruct a verdict in his favor. The court refused such request. Appellant presents as ground for reversal a prop-

osition complaining of such action. We have already held that the submission of the issue which the court did submit was authorized by the evidence. Appellant, however, further contends that the testimony showed as a matter of law that appellant's agreement was within the Statute of Frauds and unenforceable. In this connection he emphasizes the testimony of appellee that there was no specific time in which the houses were to be built or completed. Appellee was not suing for damages or lost profits suffered by reason of appellant's failure to continue his building program until said addition was built up. He was asking for reimbursement, according to the terms of his contract, for moneys expended by him in making improvements on a lot of land, the title to which appellant agreed to procure and convey to him on or before September 15, 1926, a date about eight months after the making of such agreement. Appellant admits that he did not have title to said lot and could not convey such title to appellee at the date specified. The improvements for which appellee was seeking reimbursement consisted of a well and water system for supplying water to the inhabitants of said addition, which was owned by appellant and in which appellee never held any interest. There was no testimony that said addition could not have been built up within a year from the date of the agreement. Such being the case, the contract for the building of the houses was not within the statute. Thomas v. Hammond, 47 Tex. 42, 52; Groce v. West Lumber Co. (Tex. Civ. App.) 165 S. W. 519, 522, and authorities there cited; Chevrolet Motor Co. v. Morris Auto Co. (Tex. Civ. App.) 269 S. W. 872, 875, 876, and authorities there cited. Appellee fully performed all that was required of him by the terms of his agreement with appellant. He took possession of the lot, bored the well, erected improvements, and installed a water system, all of which was valuable to appellant as the sole owner of said addition. He expended his money in doing so on the faith of appellant's promise to reimburse him in certain contingencies which would render his investment unprofitable or valueless. Both of such contingencies are shown by the undisputed testimony to have occurred. Appellee altered his position on the faith of appellant's agreement to such an extent that it would be inequitable to hold such agreement void and unenforceable. We quote from Ponce v. McWhorter, 50 Tex. 562, 572, as follows:

"Where one of the two contracting parties has been induced or allowed to alter his position on the faith of such contract to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the stat-ute, if the acts of part performance were already such as to show that they are properly referable to the parol agreement." Citing Williams v. Morris, 95 U. S. 457, 24 L. Ed. 360.

See, also, Westfall v. Perry (Tex. Civ. App.) 23 S. W. 740, 741; Burleson v. Tinnin (Tex. Civ. App.) 100 S. W. 350, 351; Lasater v. Premont (Tex. Civ. App.) 209 S. W. 753, 755, par. 4; Folmar v. Thomas (Tex. Civ. App.) 196 S. W. 861, 864, par. 3.

Appellant cannot, under the facts of this case, invoke the statute of frauds to prevent a recovery by appellee.

Appellant further contends in this connection that his agreement to reimburse appellee for his expenditures in such contingencies was without consideration. We cannot agree to this contention. Appellant was the owner of the addition and directly interested in its development. Water was an indispensable requisite to such development. It could not be procured on satisfactory terms from any other source. The testimony shows with reasonable certainty that said water system aided in the development of said addition until appellant ceased such development. The physical properties remain on the land to which appellant now has title. Title to such improvements will necessarily vest in appellant on satisfaction of this judgment. They will be available for further development of said addition in the future.

The judgment of the trial court is affirmed.