

# NUMBER 13-21-00402-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICARDO ACUNA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## On appeal from the 347th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Chief Justice Contreras**

Appellant Ricardo Acuna was convicted of capital murder and sentenced to life imprisonment without possibility of parole. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). On appeal, he argues by one issue that the evidence adduced at trial failed to sufficiently corroborate the testimony of his alleged accomplice. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. We affirm.

## I.   Background

A Nueces County grand jury returned an indictment alleging that Acuna, acting alone or together with Ismael Castillo and/or Ariana Carbajal, intentionally caused the death of Deandre Mathis by shooting him with a firearm, and was then and there in the course of committing or attempting to commit robbery or burglary of a habitation. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

At trial, Detective Brenda Garza testified she was called to investigate a shooting at a house on Coleman Avenue in Corpus Christi at about 12:30 p.m. on March 14, 2018. By the time she arrived at the scene, two individuals who had been shot—Mathis and Christopher Vincent—were being taken to the hospital. Mathis later died from his injuries, but Vincent recovered.

Garza obtained recordings from surveillance cameras located across the street from the house where the shooting took place. The recordings show a person, not visibly armed, wearing a loose black long-sleeve shirt, blue jeans, and white shoes walking toward the house and entering the house at around 11:54 a.m. About a minute later, a different person dressed in black, armed with a rifle, can be seen exiting a tan Buick and entering the house. Shortly afterward, two individuals can be seen leaving the house and departing in the Buick.

Garza also obtained surveillance footage from Danny's Tire Shop, about a mile away from where the shooting took place. The recording shows the tan Buick arriving at the tire shop at around 10:38 a.m. and departing at 11:07 a.m. on the day of the shooting. Based on the license plate, Garza was able to determine that the Buick had been reported stolen. Garza stated that, though she could not identify the driver of the Buick, she was

2

able to identify its front-seat passenger as Acuna because of the tattoos on his forehead and arms. The back-seat passenger was identified as Castillo, also based on his facial tattoos. Garza also obtained surveillance footage from a convenience store in Mathis, which depicted Acuna together with Carbajal the day after the shooting.

Police recovered fingerprints and blood from the crime scene inside the house; however, the fingerprints and blood did not match with either Acuna or Castillo.

Vincent testified that he lived in the house on Coleman Avenue with Mathis and David Garza, the house's owner. He said Mathis made money by selling synthetic marijuana out of the house. On the morning of March 14, 2018, Garza left the house at around 11:00 a.m. and asked Vincent to clean his living area. At around 11:45 a.m., as Vincent was sweeping, he heard someone knock on the door. Mathis answered the door, and "the individual on the other side of the door backed [Mathis] into the house with a gun to his head." According to Vincent, the intruder was wearing a dark-colored hoodie and had a tattoo "[o]n his right eye," and the gun was a silver-colored nine-millimeter pistol. The man was not wearing a mask, hat, or glasses.

Vincent testified he dropped his broom, put his hands up, and told the intruder to take whatever electronics were in the house. At that point, the gunman "grew frustrated, and the gun just went off" while it was aimed at Mathis. Vincent could not tell if that shot hit Mathis, and he did not see blood at the time. After the shot, Mathis began struggling with the assailant. As Vincent attempted to intervene, "this other person . . . came in with a rifle and pointed it at [him]." Vincent testified: "I was just in shock, and it just went off, and I got hit with it." Vincent stated that man with the rifle was "heavyset" and was wearing a dark "greenish" hoodie and a green bandana for a mask over his nose and mouth. He

3

could not see whether the man had any tattoos on his face. He later heard three to four more shots, and he saw the man with the rifle make his way to the back of the house. As both assailants left the house through the front door, Vincent heard Mathis say that he had been shot.

Vincent said the man with the rifle shot him in the abdomen, causing a collapsed lung and broken rib which required surgery. Vincent also stated that, as the gunmen were exiting, the first man looked back towards him and "randomly" shot him in the calf with his handgun. Police presented a photo lineup to Vincent while he was recovering in the hospital, but he was unable to identify either of the two assailants, and he initially was unable to identify either assailant at trial. On cross-examination, Vincent acknowledged that he previously testified in Castillo's trial that Castillo was the man who shot him in the calf with the handgun. He was unable to identify the man with the rifle.

Pamela Mungia, Acuna's friend, testified that, on the day in question, Acuna called her and asked to come to her apartment in Mathis. He later arrived in the tan Buick with two other people, neither of which Mungia knew. Referring to photographs, she identified Acuna's associates as Castillo and Carbajal. The three spent the night there and left around noon the next day; however, they left the Buick there. Several days later, law enforcement came to impound the vehicle. Mungia testified she later found out that Acuna and his associates had left "several different types" of bullets in a sock on her closet shelf.

Mungia conceded that she informed police that Acuna was one of the men depicted in the surveillance videos from Coleman Avenue. She agreed that she also previously testified to that effect in Castillo's trial. However, at Acuna's trial, Mungia said she was unsure if Acuna was one of the men in the videos.

4

Carbajal, Acuna's cousin, testified that Acuna contacted her for the first time in eight years on March 13, 2018. That evening, he met her at a motel she was staying at in Corpus Christi, where they drank alcohol and used Xanax and methamphetamine. At around 1:00 a.m., Castillo arrived with his girlfriend. About ninety minutes later, the group left in Castillo's "brown Buick," which Castillo said he had borrowed from a friend, to go to another motel. Castillo later drove the group back to the hotel where Carbajal was staying, and he left with his girlfriend. At around 4:30 or 5:00 a.m., Castillo returned with a black handgun and an assault rifle. Castillo and Acuna then "started to have a conversation about needing to hit a lick and needing more drugs, and stuff like that." Carbajal stated that "hit a lick" means "go and rob somebody."

At around 7:00 a.m., the group left the motel in the Buick, with Carbajal driving. The guns which Castillo brought were in the back seat, along with gloves and a bulletproof vest. They went to Danny's Tire Shop "because [Castillo] said that there was a ball in the tire, and he needed to get it changed." Afterward, at Castillo's direction, they picked up two individuals named Roland and Victoria who "said that they knew a place where [they] could get some [methamphetamine]." Carbajal heard the group discussing "a house that they could hit." Roland and Victoria directed her to the house on Coleman Avenue. Carbajal drove past the house and went to a convenience store where Castillo purchased a ski mask. She then dropped off Roland and Victoria at their request and went back to the house on Coleman Avenue. Carbajal testified: "The plan was that we were going to go in and rob them at gun point. [Acuna] was going to get off the car, . . . walk to the house, go in through the gates. That's when I was supposed to pull in and [Castillo] get off and go and help him."

5

Carbajal stated that Acuna took the handgun from the backseat and Castillo took the rifle and body armor. She saw Acuna put a hat on as he got out of the car, and she confirmed that the man walking down the street in the surveillance video was Acuna. She heard about four gunshots, which surprised her because "[n]obody was supposed to get hurt," and she heard someone say: "Stop shooting. He's already dead." Acuna and Castillo then got back in the Buick and told Carbajal to drive away. According to Carbajal, when Acuna asked Castillo "what did you do that for?", Castillo "was just all laughs." She then drove to Mungia's apartment in Mathis, where the group intended to "stay . . . until [they] figured out what [their] next step was." According to Carbajal, Acuna told Mungia that they had robbed and shot someone. Later, she saw Castillo cleaning the Buick "with Clorox and a rag." She and Acuna later went to Dallas, and she was arrested when she returned to Corpus Christi.

Carbajal testified that she was also charged with Mathis's murder. In a plea bargain agreement with the State, she agreed to plead guilty and testify at Acuna's and Castillo's trials in exchange for a recommendation of ten years' imprisonment.[1]

Edgar Rodriguez, a trooper with the Texas Department of Public Safety, testified that officers attempted to initiate a traffic stop on March 27, 2018, on a vehicle in which Acuna was the passenger. The attempted stop, which was pursuant to an arrest warrant, led to a pursuit. According to Rodriguez, "[o]nce spikes were laid out, the vehicle came to a stop" and Acuna "exi[]ted the vehicle running towards a brush area." He was eventually apprehended inside a storage facility.

---

[1] Castillo was convicted of capital murder and engaging in organized criminal activity. *See Castillo v. State*, No. 13-19-00567-CR, 2021 WL 727022, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, no pet.) (mem. op., not designated for publication).

The jury was instructed that it may find Acuna guilty of capital murder as a principal or as a party to the offense under penal code § 7.02(b). *See id.* § 7.02(b) ("If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."). The jury found Acuna guilty and he was sentenced as required by statute. *See id.* § 12.31(a)(2).[2] This appeal followed.

## II. DISCUSSION

### A. Applicable Law and Standard of Review

Article 38.14 of the Texas Code of Criminal Procedure provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. This rule "reflects 'a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'" *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)); *see Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim. App. [Panel Op.] 1981) ("[T]he testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or

---

[2] The jury also convicted Acuna of engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. § 71.02(a)(1). The trial court granted the State's motion to dismiss that charge prior to the rendition of judgment.

she might have but because his [or her] testimony is evidence from a corrupt source.").

When an appellant argues that the accomplice testimony was not sufficiently corroborated, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).[3] "The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Rather, "[t]here must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *Castillo*, 221 S.W.3d at 691. "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Dowthitt*, 931 S.W.2d at 249. "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

"An accomplice is someone who participates with the defendant before, during, or

---

[3] Acuna cites case law regarding sufficiency of the evidence to support a verdict. *See, e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). However, as he recognizes, "[a] challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole." *Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.) (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999)); *see Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (noting that the accomplice witness corroboration rule "creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards"). Acuna does not argue that the evidence as a whole was insufficient to support the guilty verdict; therefore, we do not address that issue.

after the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Carbajal was charged with the same offense as Acuna, and there is no dispute that she is his accomplice as a matter of law. *See Smith*, 332 S.W.3d at 439 ("A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law. But if the State dismisses the indictment before the witness testifies, the witness is no longer deemed an accomplice as a matter of law. A witness continues to be regarded as an accomplice, however, if the witness agrees to testify against the accused in exchange for the dismissal of the charge."). Accordingly, the court properly instructed the jury on the accomplice witness corroboration rule with regard to Carbajal's testimony.[4]

## B.    Analysis

On appeal, Acuna contends the non-accomplice evidence was insufficient to corroborate Carbajal's testimony and that, without her testimony, "the evidence fails to make the necessary connection that [Acuna] was one of the individuals involved in the offenses committed" at the house on Coleman Avenue. Specifically, Acuna argues that the non-accomplice evidence "tends to connect these individuals to each other before and after the commission of the offense, and the time at which the offense occurred, nothing more."

---

[4] The charge stated:

You can convict the defendant on the testimony of Ariana Carbajal only if-

1.    you believe that the testimony of Ariana Carbajal is true and shows the defendant is guilty; and

2.    there is other evidence, outside of the testimony of Ariana Carbajal, that tends to connect the defendant with the commission of the offense charged; and

3.    on the basis of all the evidence in the case, you believe, beyond a reasonable doubt, that the defendant is guilty.

The evidence aside from Carbajal's testimony included the following: (1) surveillance videos showing two black-clad men—one carrying a rifle—entering the house where the shooting took place at around the time of the shooting, and exiting the house shortly thereafter; (2) Garza's testimony that one of the men appearing in the surveillance videos was Acuna; (3) surveillance videos showing Acuna together with Castillo and Carbajal at Danny's Tire Shop shortly before the shooting; (4) Mungia's testimony that Acuna, Castillo, and Carbajal stayed at her apartment the night after the shooting, and that they left their tan Buick and several bullets there; (5) Mungia's testimony that she previously identified Acuna as the man walking down Coleman Avenue in the surveillance video; (6) surveillance videos showing Acuna together with Carbajal at a convenience store in Mathis the day after the shooting; and (7) Rodriguez's testimony that Acuna evaded police attempting to execute an arrest warrant.

As to the surveillance video from near the crime scene, Acuna acknowledges that Garza testified, based on his clothing and tattoos, that he was the man seen walking down Coleman Avenue toward the house. However, he contends that the videos "clearly implicate" only the second man, who is seen exiting the tan Buick with a rifle, and not the man "simply walking down the street." We disagree. The surveillance videos show both men entering the house around the time of the shooting, then exiting and fleeing in the tan Buick. This evidence, combined with Garza's and Mungia's testimony that the man walking down the street was Acuna,[5] tends to connect Acuna with the offense.

_____

[5] The jury could have also independently determined that Acuna was the man seen walking down the street in the surveillance video. *See Johnson v. State*, 354 S.W.3d 491, 494 (Tex. App.—San Antonio 2011, pet. ref'd) (rejecting appellant's argument that "photographs do not connect him to the crime because they lack sufficient clarity or detail to permit identification," and noting that "[t]he jury was . . . able to view the photographs and compare them to [appellant's] appearance at trial").

10

Acuna notes correctly that his mere presence at the scene of the crime is insufficient, by itself, to connect him with the offense. *See Dowthitt*, 931 S.W.2d at 249. However, such evidence "coupled with other suspicious circumstances, tends to connect the defendant with the offense within the meaning of Article 38.14." *Davis v. State*, 278 S.W.3d 346, 352 n.7 (Tex. Crim. App. 2009) (citing *Cawley v. State*, 310 S.W.2d 340, 342 (Tex. Crim. App. 1957)). Similarly, with regard to the surveillance videos from the tire shop and convenience store, Acuna notes correctly that his "mere presence" in the company of accomplices before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony. *See Dowthitt*, 931 S.W.2d at 249. However, again, such evidence tends to connect the defendant with the offense within the meaning of the statute when "coupled with other suspicious circumstances." *Davis*, 278 S.W.3d at 352 n.7 (citing *Gill v. State*, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994).

In this case, the evidence of Acuna's presence at the scene of the crime and with his accomplices around the time of the offense was accompanied by evidence of suspicious circumstances—specifically, Acuna and his associates left ammunition at Mungia's house the day after the shooting, and Acuna attempted to evade police when they sought to apprehend him. *See Rodriquez v. State*, 508 S.W.2d 80, 82–83 (Tex. Crim. App. 1974) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for such presence, being in the company of accomplice and subsequent flight, furnishes sufficient corroboration to support a conviction."); *see also Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."); *Coleman v. State*, 881

S.W.2d 344, 347 (Tex. Crim. App. 1994) (noting that evidence of resisting arrest shows consciousness of guilt); *Cueva v. State*, 339 S.W.3d 839, 881–82 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) ("Any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a consciousness of guilt may be received as a circumstance tending to prove that he committed the act with which he is charged.").

We conclude that the evidence adduced at trial, other than Carbajal's testimony, tended to connect Acuna to the offense. Therefore, the evidence was sufficient to corroborate the accomplice witness testimony. We overrule Acuna's issue on appeal.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of January, 2023.